MULLICAN ET AL. *v.* MERIDIAN LIGHT & RY. Co.

[83 South. 816, In Banc. No. 20917.]

1. PLEADING. *Declàration to be construed against pleader.*

A declaration is to be construed most strongly against the pleader, and the character of a contract set out as a part of it cannot be altered by any allegations or conclusions.

2. NEGLIGENCE. *Light company held not liable for death of customer's employee caused by failure of lights.*

Where a company contracted merely to furnish electrical energy for power to the operator of a linter washing and drying factory, it was not liable for the death of an employee in such factory. who, when the lights went out on account of a failure of power, fell into a vat of boiling chemicals, there being no duty on the power company toward the employee either as the agent of his employer or otherwise.

3. PLEADING. *Plea in bar setting up discharge in bankruptcy and con-concluding to county a joinder of issue if valid at all.*

In an action for the death of a servant against his employer and a light and power company whose negligence caused the death where defendant employer, set up his discharge in bankruptcy by plea in both concluding to the country, such plea was insuffi- cient in law and form, and could have been stricken out or answered either by demurrer or replication and under the circum- stance should have been considered as a joinder of issue, if valid at all for any purpose, and motion for final judgment on it should not have been sustained.

APPEAL from the circuit court of Lauderdale county. HON. R. W. HEIDELBERG, Judge.

Suit by J. W. Mullican and others against the Merid- ian Light & Railway Company and V. L. Crawford. From a judgment for defendant, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*R. H. Thompson*, of counsel for appellants.

The only feature of the brief in behalf of the Merid- ian Light & Railway Company to which we deem

proper to make extended reply is the one relating to the proximate cause of the injury and death of Mullican.

The use of old, worn, inadequate and defective machinery by the Light & Railway Company to light Crawford's factory was the cause of the lights going out and the old, worn, inadequate and defective machinery was negligently used by that company with full knowledge of all the circumstances of the case and the company was charged with knowedge of the danger in which Mullican would be placed if the lights in the factory were permitted to be extinguished. The company cannot escape liability which naturally resulted from its negligence by claiming, as is done for it, that Mullican should have remained motionless in the factory until the lights were renewed, or until daylight the next morning. The proximate cause is by no means always the last intervening cause. Where the negligence of one person naturally causes or can reasonably be apprehended to cause action by another who is injured, the negligent act of the first party does not cease to be the proimate cause of the injury because the party injured did that which he reasonably would be expected to do as a consequence of the negligent act which caused him to do what he did.

If a man shoots at another, missing him, but so frightens him as to cause him to jump in such a way as to injure himself, the shooting is the proximate cause of the injury, although had the injured party stood still he would not have been injured.

The proximate cause is that which is nearest in the order of responsible causation; that which stands next in causation to the effect, not necessarily in time or space but in casual relation. Bouvier's Law Dictionary (Rawle's 3'd Revision), p. 2762.

The going out of the lights, the darkness, caused Mullican to walk and caused him as well to fall into the vat and lose his life. It was the proximate cause of

both his walking and falling into the vat and the proxi-
mate cause of his death. The same cause as in this
case, may proximately result in more than one thing;
the going out of the lights proximately caused Mullican
to walk, to fall into the vat and to lose his life. It
would be absurd for the light company to claim that
proximate cause of Mullican's death was the fact that
the vat contained boiling liquids, and that the claim
made that decedent proximately caused his own death
by walking in the room after the lights were extinguish-
ed unsupported by no better reason than would be the
claims, if made, that the vat's containing boiling liquid
was the proximate cause of his death.

In the case recently decided by this court, *Alabama
& Vicksburg Ry. Co. et al.* v. *Beard* (No. 20552, 81 So.
14), this court did not consider the question of proxi-
mate cause worthy of mention, although that case pre-
sented the question as a defense much more reasonably
than does this one. In that case (decided March 17,
1919, by division B of this court) two independent acts
intervened after what was held to be the negligent act
of the defendants, before plaintiff was injured, one
of the acts of the plaintiff in going into the narrow
space between the railroad car and the bulk head of
the board, and the other, the act of the unknown stran-
ger in getting upon the side of the car, so that their
bodies were brought into contact by the movement of
the train. Had neither of these intervening acts been
performed, Beard would not have been injured, and
neither of these acts was the act of the defendants.

Unless the Beard case was wrongfully decided, we
submit, there is not even a shadow of merit in the
proximate cause defense in the case now at bar. See
*Yazoo City* v. *Purchel,* 89 Miss. 700; *Illinois Cent. R.
Co.* v. *Seamans,* 79 Miss. 106; *Gulf, etc., R. Co.* v,
*Sneed,* 84 Miss. 252, and *Yazoo, etc., R. Co.* v. *Aden,* 77
Miss. 382, cases holding that such intervening causes

as are claimed in this case prevent the preceding negligence of the defendant from being the proximate cause of injuries.

We will mention only one other point made in the brief to which we are now replying. The contract between Crawford and the light company was one of employment by Crawford of the light company to perform for him the duty owed by him to his employees. If Crawford made the light company his agent to light the factory, that company is liable to whomsoever was damaged by its misfeasance in performing its duty; and the use of old, worn, inadequate and defective machinery in performing its agency was a misfeasance and not a mere non-feasance. This certainly is true where, as in this case, the agent selected and used his own tools and machinery. Crawford could not, nor could the light company, escape liability to the injured third persons by stipulations embodied in their contract of agency. Establish the doctrine that both the principal and the agent, or either of them, can free themselves from liability for negligence resulting in injury to third persons, and it will soon follow that the injured in such cases will be without redress.

*Amos & Dunn,* for appellee.

On September 9, 1916, the appellee Crawford filed his plea of not guilty to the declaration. It appears, however, that on the 25th, day of August, 1916, Crawford had been adjudged a bankrupt, and that the trustee of his estate on September 26, 1916, filed a motion for a stay of further proceedings in the cause, as against said defendant, which motion was by the court sustained, and an order entered in the case accordingly by the circuit court.

Crawford was discharged in bankruptcy by an order for the district court of the United States for the East-

ern Division of the Southern District of Mississippi, on the 18th day of January, 1917; and on March 26th, 1917, he filed a plea setting up his discharge in bankruptcy in bar of the appellant's claim and demands.

No further proceedings appear to have been taken in the cause until December, 1918, some eighteen months after said plea in bar was filed; when the circuit court entered an order in which it is recited that the defendant Crawford had submitted a motion for a judgment final in his favor for the plaintiff's failure to reply to his said special plea. The court sustained the motion, and entered a judgment final in favor of the appellee, Crawford.

It is nowhere insisted, that it was error in the court below in sustaining the motion of the appellee Crawford for a judgment final, on account of the failure of the plaintiff to reply to said special plea. First, because said plea concluded to the country, and not with a verification; second, said special plea was without merit; and third, because the court had entered an order staying further proceedings in the cause, and ought not, therefore, to have heard or considered the motion until the stay order had been revoked.

We appear here only for the appellee Crawford, and will notice but briefly the contentions which are made by the appellants which affect Crawford's interest.

The body of the plea, the entire substance thereof, is of such nature and character as to essentially classify it as being one in bar, and not a plea to the merits. We submit that the plea should not be stripped of its value and effectiveness simply because the pleader inadvertently closed it with a conclusion to the country instead of by a formal verification. The plea was treated in the court below by all parties as a plea in bar, and no question was there raised as to its technical accuracy, and this objection is raised to the plea for the first time in this court. It must be conceded

of course, that the proper conclusion to such plea is with a verification, and not to the country. But we submit that in a case like this, where the technical imperfection of the plea was not called to the attention of the trial court, that it ought not to be made the basis of a reversal of the judgment of the trial court by this court. No doubt if the court's attention had been called to the technical inaccuracy of the plea, the defect would have been promptly corrected. The record does not show any exception to the court's action in sustaining the motion of the defendant for a judgment on the plea for want of a reply thereto. Certainly a party will not be permitted to stand by and see the court inadvertently misled into technical error, say nothing, and do nothing that will call the court's attention to the irregularity and be permitted thereafter to profit by such practice. In *Queen City Manufacturing Company* v. *Blaloc,* 18 So. 800, this court said: "But the defendant should object in the trial court to such proceeding in order that the court's attention being directed to the matter, the correction may be there applied." In the case of *Hayes* v. *Slidell Liquor Company,* 55 So. 456, the court again says: "The general rule is that alleged errors of the trial court occurring during the trial will not be reviewed on appeal, unless such errors have been called to the attention of the court in a motion for a new trial, in which they are assigned as grounds of the motion, and an opportunity then given to correct them, followed by a judgment overruling such motion."

In volume 6, page 283, of the Encyclopedia of P. and P. on the subject of Waiver in the matter of pleadings the rule is stated to be: "Where a party demurs, or pleads to the merits, or goes to trial, or notices the cause for trial, without objecting to his adversary's pleadings, he waives all objections thereto on the ground of indefiniteness and uncertainty." On the sub-

ject of objections to pleas, see note six under the text above quoted.

The technical exception to the plea might be the subject of more serious consideration here, if there should be any merit in the proposition of the appellants that the plea in substance was frivolous, but such is not the case.

The general rule undoubtedly is, that the bankrupt is discharged from liability for all torts, except those proceeding from the personal, wilful, or malicious act of the bankrupt himself. The Amendment of 1903 of the Act of Bankruptcy expressly provides that the bankrupt shall be discharged from all liabilities, except those of a certain character. The liability charged in the declaration in this case, is not within the excepted class, and is one from which the bankrupt may be discharged.

There is room no doubt whether under the amendment of 1903 unliquidated damages for a tort is a provable claim against the estate of the bankrupt; and the general rule seems to be that although the bankrupt is discharged from liability for all demands founded upon tort, except these of a certain enumerated class, the practice is for the bankrupt to await the reduction of such demand to judgment and then, by petition, ask for a discharge from the judgment. The right to be discharged from the liability is clearly fixed by the law. The question therefore is whether the rule of practice which seems to have been adopted by the courts is exclusive, or whether, since to be discharged from liability is a right, that parties in interest, as in this case, may not waive the rule of practice, and the discharge made available to the bankrupt by other means or methods than the rule generally adopted by the courts.

Keeping in view the fact that to be relieved of the liability is a right clearly established by law, can it be said that to plead such right in bar of the liability is

frivolous, or that when pleaded, the plea is a nullity and may be ignored? We think not; such plea could not withstand a demurrer or perhaps might be stricken on a motion. But so long as its sufficiency remains unchallenged and the parties choose to treat it as properly presenting a valid defense to the action, and where as in the instant case, the court having full jurisdiction of the subject-matter of the suit, proceeds to a final judgment therein, without objection then made, or exception taken, to the court's action, the parties ought not thereafter to be heard to complain that a simple rule of practice has been violated by the court. See authorities above referred to on the question of waiver in proceedings.

In the case of *Gully* v. *Dunlap et al.,* 24 Miss. at page 413, the court says: "It is insisted that this action cannot be maintained for the use of the parties suing, because one of them was a minor when the suit was instituted. On this point the rule is well settled, that if an infant sue, his infancy must be pleaded in abatement. It cannot be insisted upon after the defendant pleads in chief. 1 Chitty, on Pl. 436; 7 Johns. 373; 1 Cow. 33. Even if the infancy of the plaintiff had been pleaded in abatement, it has been ruled in some cases, that the court might amend by inserting a *prochein ami.* 8 Pick. R. 553." Also, see, *Schmerham* v. *Jenkins,* 7 Johns. (N. Y.) 373; *Bond* v. *Harrington,* 1 Pick. (Mass.) 552; *Draygo* v. *Moso* 1 Speers (S. Cor.) 212; *Young* v. *Young,* 3 N. H. 345.

If there was error in any of the acts of the court below, there does not appear to have been any exception taken, or objections made thereto at the time, and every assignment of error here made, which affects the interest of the appellee, Crawford, are based upon alleged errors of procedure merely in the court below and made in this court for the first time, and therefore comes too late.

Holden, J., delivered the opinion of the court.

This suit was instituted by the appellants, Mrs. Mullican and her children, against the appellees, V. L. Crawford and the Meridian Light & Railway Company, for damages for the death of John W. Mullican, husband of the appellant and father of the children, caused by the negligence of the defendants. A demurrer to the declaration interposed by the Meridian Light & Railway Company was sustained by the court as to it, and a plea of discharge in bankruptcy by the appellee, Crawford, resulted in a judgment discharging him, from which judgments this appeal is prosecuted.

In order to have a clear view of the case presented and of the legal question involved, we consider it necessary to set out the declaration in full so that we may determine whether or not it states a cause of action under the law. It may be here stated, in substance, that the appellee Crawford operated a manufacturing plant at Meridian for the manufacture of cotton linters into absorbent cotton for the purpose of making gun cotton and other high explosives. There were located in this plant several vats or boilers containing a boiling solution of chemicals. The deceased, Mulican, was employed to work in and around these vats, and was so employed when he fell into one of them. which caused his death. The declaration reads as follows:

"Plaintiffs charge that the said V. L. Crawford on the —— day of ——, 1915, established a manufacturing plant in the city of Meridian, Lauderdale county, Miss., for the manufacture of cotton linters into absorbent cotton, cotton batting, etc., and the process of manufacturing in said plant was to take the cotton linters and cotton fiber and remove therefrom all fatty oils and acids, and to bleach it and put it through certain chemical processes and prepare it for making gun cotton and other high explosives. In order to pre-

pare this cotton for gun cotton and other high explosives, the manufacturing plant of V. L. Crawford, aforesaid, was located in a large building in Meridian on the north side of which is located a large lot of machinery which is operated and driven by electric power for carding and manipulating the cotton preparatory to bleaching, and on the south side of this building is what is called the 'kier room,' and in this 'kier room' on either side thereof are located a number of vats or boilers into which the cotton is immersed into chemical baths, which vats extend above the floor in the kier room some few feet, large vats or boilers holding many hundred gallons, which extend down into a cellar underneath the floor, and the tops are placed on these vats or boilers loosely by handhold, which are even and on a level with with the floor with the kier room, and into these three vats or boilers steam and hot water are let by pipes which enter the bottom of these three vats or boilers, and in these three vats or boilers a boiling solution of chemicals is kept in which is nitric acid, sulphuric acid, lunar caustic, and other dangerous and poisonous chemicals, and in the process of manufacturing cotton it is placed in these vats or boilers. No railing is provided or other guard or protection around the tops of these vats, the tops of which are even with the floor as aforesaid, and these tops are the only means of preventing a person from falling into the same in the darkness or in the absence of light.

"The plaintiffs charge that the defendant V. L. Crawford, on the 3d day of March, 1916, and before and after that time, had a contract with his codefendant, the Meridian Light & Railway Company, who owned and operated an electric power plant in the city of Meridian, which contract was made by the said V. L. Crawford with the said Meridian Light & Railway Company for and on behalf of himself and his employees,

who were employed to work in said manufacturing plant, one of whom was the said John W. Mullican, deceased, and to furnish electric lights and power for his (V. L. Crawford's) manufacturing plant, and for the benefit of his employees therein as aforesaid, and to operate the machinery used in said plant, the said manufacturing plant operated by the said V. L. Crawford was operated and driven by the electric power furnished by the said defendant, said Meridian Light & Railway Company, and by the dangerous agency of steam.

"And plaintiffs charge that this kier room with these vats of boiling chemicals as aforesaid was an exceedingly dangerous place to work, and that the tops of these vats were, of course, frequently removed, and had to be in order to immerse the cotton in them, and on account of the poisonous steam coming from them and the danger of falling into them, particularly at nighttime, the kier room was a most dangerous place to work, as both the defendants then and there well knew, and that V. L. Crawford, as employer of J. W. Mullican, deceased, was bound by law to make this kier room a reasonably safe place to work by day and by night, and said Mullican was employed to work there at night, and in order to make this kier room a reasonably safe place to work, Crawford, instead of performing the duty himself of lighting the room, in order to prevent his employees from falling into said vats and being hurt in said kier room, employed the said Meridian Light & Railway Company to perform this duty for him, the duty, as aforesaid, which he owed John W. Mullican, and both the defendants well knew that it was of vast importance, in order to make this room a reasonably safe place to work, that these lights be kept burning constantly in the night.

"Plaintiffs charge that they file herewith a copy of the contract so made by V. L. Crawford for and on

behalf of his employees as aforesaid with the Meridian Light & Railway Company and make the same a part of this declaration the same as if fully copied herein.

"Plaintiffs further charge that said Meridian Light & Railway Company had for a long time furnished the electric current which lights this kier room where John W. Mullican was required to work for Crawford among these dangerous vats of boiling chemicals, and the conduct of said Mulican there and his work there was based in good faith upon his expectations that said Light & Railway Company would continuously perform its duty under its contract aforesaid with his employer and master on his behalf made as aforesaid, and would not permit their lights to go out during working hours of the night and thus render this kier room an unsafe place to work.

"Plaintiffs further charge that on said 3d day of March, 1916, said John W. Mullican being employed by the said V. L. Crawford in said manufacturing plant aforesaid, and being at the time in the room known as the 'kier room' in the performance of his duty, that is, the room where the tops of these three vats or boilers came up with the level of the floor, and over which vats the tops were placed as aforesaid on a level with the floor, and in the nighttime the electric lights in said plant, by the carelessness and negligence of said Meridian Light & Railway Company suddenly, on account of their defective machinery, and the carelessness or indifference of its agents and servants, were permitted to go out and left this room in darkness, and it so happened that just about this time, by the carelessness and negligence of said V. L. Crawford and his servants, the fellow servants of said J. W. Mullisan one of the tops of these three vats was left off and the vat was left open, and this vat was then full of a boiling solution made up of nitric acid, sulphuric acid,

lunar caustic, and other dangerous and poisonous chemicals, and the said John W. Mullican in the discharge of his duty in said kier room went walking across the floor to secure a lantern to make a light in the darkness and fell into this open vat of boiling chemical compound, and there was cooked literally to death. He was soon rescued and pulled out and lingered for about one week, suffering in body and mind all the tortures, agonies, and pains of the lost, and the flesh fell away from his bones, and he died as a result of falling into said vat.

"Plaintiffs charge that the Meridian Light & Railway Company knew that this result was likely to follow, and had reason to anticipate such a result if they failed to comply with their contract, which was to keep lights continuously burning in said kier room during the night and that they well knew that said lights were furnished for the use and benefit of these employees and to make said kier room a safe place for them to work, as it was employed to do for said Crawford, for him and in his place.

"Plaintiffs further charge that it was then and there the duty of said Crawford to furnish his employees and John W. Mullican a safe place to work, and to keep and maintain said place so furnished him to work in a reasonably safe condition, and he breached this duty and was guilty of gross carelessness and negligence, in that the said three vats were so defectively constructed, as his codefendant well knew, that no safeguard or railing was provided around the top thereof, even with the floor as they were, or other means to prevent people from falling into the same when the tops were off, and also by the carelessness and negligence of his agents and servants by then and there leaving the tops off of said vat into which Mullican fell.

"And plaintiffs further charge that it was then and there the duty of the Meridian Light & Railway Company, which it then and there owed the said V. L. Crawford and his said employee,, John W. Mullican, to keep and maintain lights in said kier room, and to keep them constantly burning, and it breached this duty and was guilty of gross carelessness and negligence in permitting its lights to suddenly go out, then and there at the time Mullican fell into said vat, and that its lights went out because of the breaking down of its machinery, which was defective and worn out, and the lights were permitted to go out by the carelessness and gross negligence of its employees in failing to operate its plant so as to keep said lights continuously burning, as it had undertaken to do for the benefit of said Mullican.

"And so the plaintiffs charge that by the combined and joint negligence, which joint negligence was the proximate cause of Mullican's death, and by the joint negligence of said defendants as aforesaid, John W. Mullican was caused to fall into said vat and get burned to death as aforesaid, from which an action has survived to the plaintiffs, and they have been damaged, and also they have the right to demand damages for all pain and suffering endured by said J. W. Mullican as aforesaid, and all losses sustained by him;

"Wherefore they sue and demand judgment for actual and punitive damages in the sum of fifty thousand dollars against the said defendants, together with all costs of this suit."

The written contract between the Meridian Light & Railway Company and Crawford, in which the light company agrees to furnish electrical energy for power purposes at the plant of Crawford, is filed with the declaration as an exhibit, and is pleaded as a part of it. We here set out the contract between the light company and Crawford, which is as follows:

"Contract.

"This contract and agreement made and entered into this the 1st day of February, 1915, by the Meridian Light & Railway Company hereinafter styled for convenience sake 'party of the first part,' and Mr. V. L. Crawford, hereinafter styled for convenience sake, 'party of the second part,' both of the city of Meridian, Lauderdale county, state of Mississippi, witnesseth:

"That the party of the first part hereby agrees to furnish to the party of the second part electrical energy for power purposes at the premises occupied by the party of the second part known as a 'linter washing and drying factory located on the Alabama Great Southern Railroad in the eastern part of the city of Meridian. Said electrical energy to be furnished for a period of three years from the date of signing of this contract at a rate of two and one-half cents per kilowatt hour, the amount of bill to be determined by the readings of an electrical meter or meters which the party of the first part will install in the building or premises owned by the said party of the second part.

"In consideration of this it is agreed that the party of the second part shall operate twenty-four hours per day two twenty-horse power motors and three five-horse power motors during the entire period of this contract. It is further agreed that in the event the party of the second part ceases to operate twenty-four hours per day, that this contract becomes void, and that the party of the second part will be furnished by the party of the first part electrical energy at its regular published rates.

"In consideration of the party of the second part paying its bills promptly on or before the tenth day of each month following that in which the service is rendered by the party of the first part, a discount of one-half cent per K. W. H. will be allowed to the party of the second part by the party of the first part.

"It is further agreed by and between the two parties that the duly authorized agents of the party of the first part shall have free access to the motors and their connections which will be installed in the premises of the party of the second part at all hours and for any purpose.

"It is further agreed and understood that the party of the second part shall assume all risks for damages caused by defective wiring.

"It is also agreed that the party of the first part may have the privilege of removing its meters, and discontinuing furnishing service upon the failure of the party of the second part to pay said bills for electrical energy promptly when due.

"It is also agreed by and between the two parties that the party of the first part shall not be held liable on account of interruptions to service due to boiler explosions, lightning, cyclones, or other causes beyond its control.

"Signed in duplicate this the 1st day of February, 1915, Meridian Light & Railway Company, by [Signed] A. B. Patterson, General Manager. [Signed] V. L. Crawford."

The contract between Crawford and the light company having been filed as a part of the plaintiff's declaration, the plaintiffs rights must be determined by it with reference to whether or not the light company owed any duty to the deceased employee of Crawford. The declaration is to be construed most strongly against the pleader, and the character of the contract set out as a part of the declaration cannot be altered by any allegations or conclusions of the declaration. Therefore, whether there was such relationship between the deceased and the light company as imposed a duty of reasonable care by the light company toward him must be ascertained from the terms of the contract set out and relied upon by the pleading of the plain-

tiffs below. In other words, if there be a conflict between the terms of the written contract and the allegations and conclusions of the declaration, the true fact will be taken to be in conformity with the contract pleaded in the declaration.

It is clear to us that the contract obligated the light company to do no more than to "furnish to the party of the second part electrical energy for power purposes at the premises occupied by the party of the second part, known as a 'linter washing and drying factory.'"

The contract imposed no duty upon the light company to furnish lights and keep them burning in the factory for the use and safety of the employees therein. No such service was promised or contemplated under the contract, therefore it necessarily follows that, since there was no such duty on the part of the light company toward the deceased, there can be no liability against it for damages on account of the unfortunate death alleged to have been caused by the extinguishment of the lights in the plant.

The appellant contends that the light company was the agent of Crawford, and as such agent negligently failed to keep the plant lighted as a duty owed to Crawford and the deceased employee, Mullican. We have reviewed exhaustively the authorities on the question of the liability of agents for negligence, in the performance of duties, to principals and third persons, and with much interest we have observed the distinctions made between acts of nonfeasance and misfeasance, or acts of omission and commission. We find our own court in *Feltus* v. *Swan*, 62 Miss. 415, held that a mere agent is not liable for an omission of duty except to his principal. This rule appears to be well established in the text-books and many decisions in other states. However, the more modern rule, which we think is based upon better reasoning, is that the relation of agency does not exempt a person from liability for

an injury to a third person resulting from his neglect of duty for which he would otherwise be liable. This liability is not based upon the contractual relation existing between the principal and agent, but upon the common law obligation that all persons must so use that which he controls as not to injure another. But it must be borne in mind that this rule of liability always rests upon the question of the duty of the agent toward the injured party and his negligent disregard or violation of that duty, and that where no duty exists there can be no liability. It is the fact that the agent is guilty of a wrongful or negligent act amounting to a breach of duty which he owes to the injured person that makes him liable. It seems, therefore, that the modern rule tends to abolish the distinction between the agent's acts of commission and omission wherever such act involves a breach of duty. 21 R. C. L. 851; Story on Agency, section 309.

It is argued, in substance, by the appellant that the light company as agent of Crawford negligently failed to furnish lights continuously burning for the use and protection of the employees in the factory. This contention cannot be maintained, in our judgment, for the reason that there was no privity or other relation between the light company and the deceased which obligated the light company to furnish continuous lighting, or any lights whatever, in the factory.

Nor was there any common-law duty imposed upon the light company to furnish a safe and continuously lighted plant for the use and safety of the deceased. In truth, the light company here was not an agent of Crawford to furnish lights in the factory. It had no control or supervision over the lighting of the plant, but was a mere contractor to furnish electrical energy for power purposes at a stipulated price per kilowatt hour. Therefore, in view of the facts alleged in the declaration, there is no liability on the part of the

light company for the unfortunate death of Mr. Mullican; consequently the judgment of the lower court as to the light company is affirmed.

As to the appellee Crawford, we think the lower court erred in rendering a judgment in his favor on the plea in bar setting up his discharge in bankruptcy. The motion, which was sustained by the court, for final judgment on this plea should not have been granted until the order of a stay of proceedings in the case had been set aside, and, even then, judgment on the plea should not have been allowed, since the plea concluded "to the country." It is true that this was merely a mistake in the form of the pleading, and the plea could have been amended to one of verification, which would have called for a replication, yet this was not done, and since the plea put at issue the fact pleaded by concluding "to the country," we are not willing to say that, while the pleadings were in this shape through no fault of appellants, and without waiver, the motion for a final judgment on the plea was proper. It appears that the plea was insufficient in law and form, and could have been stricken or answered either by demurrer or replication, but its conclusion "to the country" should have been under the circumstances considered as a joinder of issue, if valid at all for any purpose.

The judgment of the lower court as to the appellee Crawford is reversed, and the cause remanded; affirmed as to the appellee light company.

*Affirmed in part, reversed and remanded in part.*

Etheridge, J. (dissenting).

I am compelled to dissent from that part of the opinion in this case which holds that the declaration did not state a cause of action against the Meridian Light & Railway Company. The cause having been decided on bill and answer, all the allegations of the bill are

to be taken as true, and if they are true I think liability exists. A critical reading of the declaration set out in the majority opinion shows that the Meridian Light & Power Company had a contract with V. L. Crawford, which contract was made on behalf of himself and his employees who were employed to work in his manufacturing plant, among whom was the deceased, and that said Meridian Light & Railway Company was to furnish electric light and power for Crawford's manufacturing plant and for the benefit of his employees therein. It is further alleged that the kier room was an exceedingly dangerous place to work; that it contained boiling vats, the tops of which had to be frequently removed for the purpose of immersing the cotton, and that both of the defendants Crawford and the Meridian Light & Railway Company knew of the dangerous condition; that in order to make the said room safe for his employees it was his duty to have the premises properly lighted, and that, instead of performing the duty himself and preventing his employees from falling into the vats and being hurt in the room, Crawford employed the Meridian Light & Railway Company to light it for him; and that both defendants knew the importance of keeping these lights constantly burning at night. It further alleged that the Meridian Light & Railway Company had for a long time furnished electric current which lighted this kier where the deceased was required to work, and that Mullican acted in good faith upon the expectation that the light company would continuously perform its duty in the premises, and that Mullican was at work in the performance of his duty when the lights went out through the negligence of the Meridian Light & Railway Company on account of their defective machinery and the carelessness and indifference of its agents and servants, leaving the room in darkness. It further charged that the Meridian Light & Railway Company knew that the injuries of

the kind complained of were likely to follow, and that
it had reason to anticipate such a result as deceased's
injury if it failed to comply with its contract and keep
the lights continuously burning during the night, and
that both of said defendants knew that the said lights
were furnished for the use and benefit of the employees
of Crawford and to make the kier room a safe place to
work. It was further charged that it was the duty of
the Meridian Light & Railway Company to keep and
maintain the lights in the said kier room, and to keep
them constantly burning, and that it breached this
duty and was guilty of gross carelessness and negli-
gence in permitting its lights to go suddenly out, and
that the lights went out because of the breaking down
of the machinery of the Meridian Light & Railway
Company, which was defective and worn out, and the
lights were permitted to go out by the carelessness and
gross negligence of its employees in failing to operate
its plant so as to keep said lights continuously burning
as it had undertaken to do for the benefit of Mullican.
An analysis of the contract made exhibit to the declara-
tion shows that the manufacturing plant of Crawford
was required to operate twenty-four hours per day two
twenty-horse power motors, and three five horse power
motors during the entire period of the contract. Under
the contract the Meridian Light & Railway Company
was to furnish Crawford with electrical energy for
power purposes at the premises occupied by the linter
washing and drying factory in the city of Meridian for
a period of three years, at a reduced price per kilowatt.
The contract further recites:

"It is further agreed by and between the two parties
that the duly authorized agents of the party of the
first part [Meridian Light & Railway Co.] shall have
free access to the motors and their connections which
will be installed in the premises of the party of the

second part *at all hours and for any purpose."* (Italics mine.)

In my opinion this contract in no wise contradicts the allegations of the declaration. It is well known that in cities the lights are generally furnished by electric light companies to business institutions and residences for hire, and it is well known that the same current that furnishes power is used for lighting and heating purposes. The same socket the light bulb is inserted in may be used to supply motion or heat. Electrical energy is adapted equally to all purposes above named, and may be transformed from one purpose to another by the simple expedient of changing the appliances from light to heat or motion, or *vice versa.*

The declaration alleges specifically that the Meridian Light & Railway Company was engaged in lighting the plant, and had been for a long time. This allegation is not contradicted by the contract at all.

I think this case falls within the principle announced by Chief Justice Gray in *Osborn* v. *Morgan,* 130 Mass. 102, 39 Am. Rep. 437. In this case Judge Gray, who afterward was a member of the supreme court of the United States, states:

"If an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the non-feasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any erson who suffers injury by reason of his having so left them without proper safeguards."

This principle is announced in this decision quoted from in Meachem on Agency (2d Ed.), sections 1465-1472, and this distinction is discussed and the distinction between nonfeasance and misfeasance clarified in 2 Corpus Juris, pp. 824-826, and *Lough* v. *Davis*, 30 Wash. 204-208, 70 Pac. 491, 59 L. R. A. 802, 94 Am. St. Rep. 848, and note; *Mayer* v. *Thompson-Hutchison Co.*, 104 Ala. 611, 16 So. 620, 28 L. R. A. 433, and note, 53 Am. St. Rep. 88; also *Campbell* v. *Portland Sugar Co.*, 62 Me. 552, 16 Am. Rep. 503; *Baird* v. *Shipman*, 132 Ill. 16, 23 N. E. 384, 7 L. R. A. 128, 22 Am. St. Rep. 504; *Cameron* v. *Mount*, 86 Wis. 477, 56 N. W. 1094, 22 L. R. A. 512; *Ward* v. *Pullman Co.*, 131 Ky. 142, 114 S. W. 754, 25 L. R. A. (N. S.) 343, and note. See, also, *Ellis* v. *McNaughton*, 76 Mich. 237, 42 N. W. 1113, 15 Am. St. Rep. 308; *Consolidated Gas Co.* v. *Connor*, 114 Md. 40, 78 Atl. 725, 32 L. R. A. (N. S.) 809.

If the contract had never been entered upon by the Meridian Light & Railway Company, no one other than Crawford would have a right of action for the failure to perform the contract, but when the Meridian Light & Railway Company entered upon the performance of its contract it became responsible for injuries resulting from its wrong and negligence in the performance of the contract. The declaration shows that this place was highly dangerous, and that the manufacturer was manufacturing ingredients of high explosives, and that common prudence required the place to be kept lighted. It was the duty of the Meridian Light & Railway Company to furnish suitable machinery and appliances for the discharge of its contract; and, if it was using worn-out machinery, which was liable at any time to break down and leave this dangerous place unlighted, it was negligence for which it was liable.

COOK, J., joins in this dissent.