James K. MIMS and Betty
Mims, Plaintiffs,

v.

Herbert Eugene FRADY, Defendant.

No. GC 76–65–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

June 29, 1978.

G. Hite McLean, Kimbrough, Kimbrough & McClean, Greenwood, Miss., for plaintiffs.

J. Murray Akers, S. Ira Pittman, Jr., Greenville, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action has been tried to the court without a jury and is now ripe for decision.

At the conclusion of the trial, following argument of counsel, the court announced that a review of the authorities cited at oral argument would be beneficial to the court, and indicated that a bench opinion would be rendered at a later time while the court was sitting at Greenville. The court has been unable to arrange a time for this to be done. The action will be concluded by this memorandum of decision which will contain findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

The court makes the following findings of fact.

The plaintiffs are James K. Mims and his wife Betty Mims. As most of the underlying facts relate to the activities of the husband, any reference herein to plaintiff will be to him and not to his wife, unless otherwise expressly stated.

In August, 1971, plaintiff visited the plant of the Freezie Corporation (hereafter "Freezie") in Atlanta, Georgia, for the purpose of securing a distributorship of Freezie's "Slush Drink Freezers" (hereafter "freezers") in Mississippi. The distributorship was granted plaintiff in September, 1971. Plaintiff understood that his purchase of freezers would be financed through a financial arrangement made by Freezie with a finance company. In order to facilitate the financing of his purchases, plaintiff delivered to Freezie a financial statement dated September 1, 1971, reflecting a net worth of $121,209.00 (Defendant's Exhibit 2).

On the occasion of the issuance of the distributorship, and the delivery by plaintiff to Freezie of his September 1, 1971, financial statement, arrangements were made for plaintiff to purchase 20 freezers to be delivered in staggered lots of four or five each until about March 1, 1972. When the distributorship was arranged, defendant Herbert E. Frady (hereafter "Frady") sold plaintiff two Model "300" Freezie Machines

(single barrel slush freezers) for which plaintiff paid Frady the sum of $1500.00. (Plaintiff's Exhibit 1).[1]

Frady was engaged as a commission salesman by Freezie during the time pertinent to this action. He was free to fix his own hours of work and was not engaged in selling the products of other manufacturers. This relationship had its inception in April, 1971. Prior to that time, Frady was full-time salaried salesman for Freezie. Freezie, for the most part, was represented by Frady in all of its dealings with plaintiff.

On November 8, 1971, in the early evening hours, Frady came to plaintiff's home in Mississippi with four freezers and finance papers for twenty units. He prevailed upon plaintiff and his wife to sign a non-cancellable lease for twenty freezers with XYO Quip, Inc., Cincinnati, Ohio. (Plaintiff's Exhibit 2). The lease provided that the freezers would be supplied by Freezie. The amount of the lease was $26,472.60 to be paid in 36 monthly rent payments of $735.35 each, the first three of which were to be paid in advance. This lease had been prepared by Freezie and was complete in every respect except for the signatures of plaintiff and his wife. The lease was accepted by XYO Quip, Inc. on November 15, 1971. The lease recited that it covered 20 used model "300" Freezie Slush Drink Freezers, S/N's on attached schedule. The schedule was not attached at the time the lease was signed by plaintiff and his wife, but was later attached.

Plaintiff and his wife were induced to sign an acceptance letter in which they acknowledge receipt of the 20 freezers. (Plaintiff's Exhibit 3). Plaintiff knew at the time of execution that the letter would be used by Freezie in financing the purchase of the freezers through the finance company. Though the finance papers indicate a sale of the freezers to XYO Quip, and a lease of the freezers to plaintiff the effect of the transaction is a sale of the freezers to plaintiff, the purchase price thereof to be financed by XYO Quip. The acceptance letter as introduced in evidence has a schedule of the freezers attached. The schedule was attached after the transaction between plaintiff and his wife and Frady.

The file includes a copy of an invoice issued by Freezie to XYO Quip for the subject machines. (Plaintiff's Exhibit 4).

After delivery of the 4 freezers on the night in question, and the execution of the lease and acceptance letter by plaintiff and his wife, at the request of plaintiff, Frady issued a written document (ticket) evidencing a sale to plaintiff, under the trade name of "Freezie of Mississippi", of 4 model "300" rebuilt Freezie units, Serial Numbers Y 8047, Y 6941, Y 7645 and Y 7610. The following notation appears on the sales ticket: "[f]irst 4 units of 20 unit order—balance of 16 to be delivered on request. H. Frady, James K. Mims". (Plaintiff's Exhibit 5).

After making delivery of the 4 units, Frady returned to Atlanta where an invoice was prepared evidencing the sale of the 20 machines to XYO Quip. Acting upon the documents consisting of the invoice, the lease and the acceptance letter with schedules attached, XYO Quip closed the transaction, noting its acceptance upon the lease and issuing to Freezie its check for $11,127.28, after deducting obligations due it by Freezie. Frady was paid $3,000 from the proceeds of the check as commissions on the transaction.

The four freezers delivered to plaintiff were sold as rebuilt machines. The evidence shows that they were defective and inoperable. Freezie was placed in bankruptcy on November 22, 1971, before plaintiff requested delivery of any of the remaining machines. Plaintiff was not listed as a creditor in the bankruptcy proceedings and has not been able to obtain delivery of the machines. Bankruptcy of Freezie renders this impossible.

XYO Quip sued plaintiff and his wife on the lease contract in this court in Civil

---

1. At the trial this transaction was shown to represent three instead of two freezers. The issue is immaterial to the court's decision.

Action No. GC 74–117–S and recovered judgment for $11,127.28. (Plaintiff's Exhibit 7). The court's opinion directing entry of the judgment is in the trial record of the action sub judice. (Plaintiff's Exhibit 7). Plaintiff has paid the judgment (Plaintiff's Exhibit 8) and seeks to recover in the action sub judice the amount paid in settlement of the judgment, and the court cost and attorneys fees incurred in defending the case.

Plaintiff and his wife ground their complaint in this action upon the theory that Frady acted as an independent broker and salesman for Freezie in the transaction with them; that he fraudulently represented the condition of the 4 freezers which he delivered to them; and that he perpetrated a fraud upon them by securing their signatures to the lease and acceptance letter, well knowing at the time that Freezie was on the verge of bankruptcy and could not deliver the other freezers.

Frady was not a party to the prior action brought by XYO Quip against plaintiff and his wife, nor did he appear as a witness in the case. The court, in its memorandum in that case held that Mims and his wife trusted Frady, and signed the documents with faith that he would carry through on the transaction, making delivery of the machines as represented by him.

The action is *Erie* bound.[2] The Mississippi Supreme Court recognizes the generally accepted rule "that fraud is never presumed, but must be proven as to all elements by clear and convincing evidence". *Crawford v. Smith Brothers Lumber Co., Inc.,* 274 So.2d 675, 677 (Miss.1973).

In *Mayfield Motor Company v. Parker,* 222 Miss. 152, 75 So.2d 435 (1954), the Mississippi Supreme Court said:

In *H. D. Sojourner & Co. v. Joseph,* 186 Miss. 755, 191 So. 418, 421, on the question of what amounts to proof of *scienter,* or such knowledge as charges one with the consequences of his acts, in fraud and deceit, this Court recognized as stating the settled rule, a quotation approved in *Vincent v. Corbett,* 94 Miss. 46, 47 So.

641, 21 L.R.A.,N.S., 85, as follows: " 'To make a party liable in an action at law for false representations, it must be shown that he made the representations with actual knowledge of their falsity, *or without knowing whether they were true or false, or under such circumstances that he ought to have known that they were false, whether he did or not.' "

75 So.2d at 437 (Emphasis in original).

In *Salitan v. Horn,* 212 Miss. 794, 55 So.2d 444 (1951), the court said:

In disallowing as a defense an oral promise to reduce the indebtedness, if the contract was renewed, in *McArthur v. Fillingame,* 184 Miss. 869, 186 So. 828, 829, this court said: ". . . *fraudulent representations* upon which a party may predicate any demand for relief *must relate to past or presently existing facts, as facts, and cannot consist of promises,* except in some cases when a contractual promise is made with the present undisclosed intention of not performing it.

55 So.2d at 446 (Emphasis in original).

The Mississippi Supreme Court said in *Mullican v. Meridian Light & Ry. Co.,* 121 Miss. 806, 83 So. 816 (1920):

We find our own court in *Feltus v. Swan,* 62 Miss. 415, held that a mere agent is not liable for an omission of duty except to his principal. This rule appears to be well established in the textbooks and many decisions in other states. However, the more modern rule, which we think is based upon better reasoning, is that the relation of agency does not exempt a person from liability for an injury to a third person resulting from his neglect of duty for which he would otherwise be liable. This liability is not based upon the contractual relation existing between the principal and agent, but upon the common-law obligation that all persons must so use that which he controls as not to injure another. But it must be borne in mind that this rule of liability always rests upon the question of the duty of the

2. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1928).

agent toward the injured party and his negligent disregard or violation of that duty, and that where no duty exists there can be no liability. It is the fact that the agent is guilty of a wrongful or negligent act amounting to a breach of duty which he owes to the injured person that makes him liable. It seems, therefore, that the modern rule tends to abolish the distinction between the agent's acts of commission and omission wherever such act involves a breach of duty.

83 So. at 819.

The rule is stated in 3 Am.Jur.2d *Agency* § 300 (1962):

In accordance with these principles, an agent or other employee, merely because of his relationship as an agent or employee, or because of the additional fact that he has acted at the direction or command of his employer, cannot escape or exempt himself from liability to a third person for his own negligence or his own positive wrongs, such as a trespass, an assault, the conversion of property, *fraud or misrepresentation*, defamation, or other form of tortious conduct.

3 Am.Jur.2d at 661 (Emphasis added). (Footnotes omitted).

■ It is clear in the action sub judice that if Frady participated in the transaction with plaintiff with knowledge or under such circumstances that he ought to have known that Freezie could or would not perform and make available to plaintiff the 16 freezers which were not delivered on November 8, 1971, he would be liable for plaintiff's loss, even though he was acting as the agent for Freezie.

Did Frady know or were the circumstances such that he ought to have known that Freezie was in such a precarious financial condition that bankruptcy was imminent and that delivery of the 16 freezers in lots staggered over the winter months was impossible? The evidence must be clear and convincing that Frady knew or under the circumstances ought to have known that plaintiff was the victim of a fraud.

■ Frady, at one time was a full time salaried employee of Freezie. For sometime prior to November 8, 1971, Freezie was in dire financial trouble. This was known, or under the circumstances ought to have been known to Frady. After April, 1971, Frady did not receive a salary. He was compensated by way of commissions on freezers which he sold.

In August and September 1971, plaintiff visited Freezie's plant in Atlanta, and was granted a distributorship in Mississippi. In late September or early October, plaintiff agreed to purchase 20 freezers through Frady, the commissioned agent. The machines were to be delivered in staggered lots of five each over a period of months on the request of plaintiff. Plaintiff planned to travel to Atlanta to pick up the freezers.

On the night of November 8, 1971, Frady appeared at plaintiff's home near Carrolton, Mississippi, with 4 freezers and documents evidencing the sale of the 20 freezers. Plaintiff had not requested the delivery of the 4 freezers and the delivery was initiated by Frady.

The closing documents hereinbefore enumerated, executed by plaintiff and his wife, were carried the next day to Atlanta, where an invoice to XYO Quip, Inc., was prepared, describing the 20 machines by serial numbers. A schedule of the freezers identified by serial numbers was attached to the lease and acceptance letter. The documents were then carried that day or the next day by plane by Frady to the office of XYO Quip, in Cincinnati, Ohio. On November 10, XYO Quip purchased the papers, giving Freezie credit for a portion of the funds realized from the negotiation of the documents on a prior indebtedness due it by Freezie. The balance in the sum of $11,127.28 was remitted via check to Freezie. Frady was paid $3,000, as commissions, from the proceeds of the check. Freezie filed its voluntary petition in bankruptcy in the federal court in Atlanta on November 22, 1971.

The court finds that it is shown by clear and convincing evidence that Frady knew or the circumstances were such as he ought to have known, that plaintiff would never receive the additional 16 machines for

which he and his wife executed the finance papers. Such being the case, plaintiff was defrauded by the activities of Frady and the Mississippi rule of law fixes liability on him for plaintiff's loss.

Plaintiff is entitled to recover, by way of indemnity, the amount paid by him to satisfy the XYO Quip judgment, costs of the suit and a reasonable attorney's fee for defending the XYO Quip action. *Celotex Corp. v. Becknell Construction, Inc.*, 325 So.2d 566 (Miss.1976).

The amount paid by plaintiff on July 1, 1976, to satisfy the XYO Quip judgment was $8,750.00. Plaintiff is entitled to recover this amount with 8% interest from July 1, 1976, and the costs of the suit amounting to $515.75. Plaintiff claims an attorney fee of $5,000.00, but the court has no basis upon which to judge the reasonableness of the amount. Plaintiff will be given 10 days within which to submit proof by way of affidavit as to the reasonableness of the fee. Defendant may have 10 days thereafter within which to contest the reasonableness of the fee.

An appropriate judgment will be entered when the award for the attorney fee is fixed.