ALABAMA GREAT SOUTHERN R. Co. v. F. A. HULETT & SON.

(Division B. Jan. 12, 1931.)

[131 So. 814. No. 28959.]

**Bozeman & Cameron,** of Meridian, for appellant.

**D. C. Callon,** of Meridian, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action against the appellees in the county court of Lauderdale county to recover the sum of one hundred eighty-one dollars and forty-three cents, an alleged undercharge on two carloads of iron beds shipped to the appellees from Kenosha, Wisconsin, to Meridian, in this state.

There was a trial on agreed facts between the parties, resulting in a judgment in appellees' favor, from which the appellant appealed to the circuit court where the

judgment of the county court was affirmed, and from the judgment of the circuit court appellant prosecutes this appeal.

The facts agreed upon between the parties were made a part of the record, and, leaving off the formal parts, are as follows:

"On about October 21, 1925, the Simmons Bed Company, of Kenosha, Wisconsin, shipped from that point two carloads of iron beds with metal springs consigned to F. A. Hulett & Son, Meridian, Mississippi, routed via EJE CCCSTL and Southern via Birmingham. F. A. Hulett & Son requested the shipper to provide for the stoppage of said shipment at Tuscaloosa, Alabama, for partly unloading at Tuscaloosa, and the bill of lading contained the following provision written thereon: 'Stop over at F. A. Hulett & Son, Tuscaloosa, Alabama to partly unload.' The bill of lading was issued by Chicago & Northwestern Railway at Kenosha, Wisconsin. The shipper ordered a fifty-foot car for said shipment, but the railroad being unable to furnish a fifty-foot car, furnished instead two smaller cars into which the shipment was loaded and the two cars moved as one shipment. One of the cars moved through to Meridian without stoppage at Tuscaloosa and one of the cars was stopped at Tuscaloosa and partly unloaded by Hulett, and the balance then moved from Tuscaloosa to Meridian on the original bill of lading. The weight of the freight in the car which stopped at Tuscaloosa was thirty-two thousand three hundred pounds, before being partly unloaded at Tuscaloosa, and the weight of the freight left in the car after partly unloading, which moved from Tuscaloosa to Meridian was eighteen thousand two hundred pounds. The through rate on said shipment from Kenosha, Wisconsin, to Meridian, Mississippi, as fixed by the tariffs of the originating carrier and the other carriers handling the shipment was seventy-eight cents per one hundred pounds. If the through rate from Kenosha to Meridian,

being seventy-eight does not apply, then the minimum weight provided by the tariffs for the car which was stopped at Tuscaloosa was thirty-two thousand four hundred pounds, north of the Ohio River; that is to say from Kenosha to Cincinnati, and south of the river the minimum weight was thirty thousand pounds, applying from Cincinnati to Meridian. The tariffs of the Alabama Great Southern Railroad Company over which the shipment moved to Tuscaloosa, and upon which railroad Tuscaloosa is situated, did not provide for any stop-over privilege at Tuscaloosa for partly unloading. The local rate on said shipment from Tuscaloosa to Meridian, as provided by the tariffs of the said Alabama Great Southern Railroad Company is seventy-two cents per one hundred pounds. Hulett & Son paid the freight on both of these cars at the through rate of seventy-eight cents per one hundred pounds, and by a miscalculation they paid ten dollars and ninety-two cents over the amount actually due at the said seventy-eight-cent rate. There is no rate published from Kenosha to Tuscaloosa. The rate from Kenosha to Cincinnati is thirty-one and one-half cents per one hundred pounds, which applied to thirty-two thousand four hundred pounds, makes one hundred two dollars and six cents. The rate from Cincinnati to Tuscaloosa is sixty-two cents per hundred pounds, which applied to the actual weight of thirty-two thousand three hundred pounds makes two hundred dollars and twenty-six cents; the sum of the two being three hundred two dollars and thirty-two cents. Hulett & Son paid the agent at Tuscaloosa one hundred nine dollars and ninety-eight cents, leaving a balance of one hundred ninety-two dollars and thirty-four cents as per the above calculation. The freight on the eighteen thousand two hundred pounds moving from Tuscaloosa to Meridian, at seventy-two cents per one hundred pounds amounted to one hundred thirty-one dollars and four cents. Seventy-two cents is the local rate on such shipment from Tuscaloosa to

Meridian as provided by the published tariff of said A. G. S. Railroad. Hulett paid the full freight on the second car, which moved from Kenosha to Meridian without stopping at Tuscaloosa, and by some miscalculation paid ten dollars and ninety-two cents excess, for which he is entitled to credit, which leaves the difference of one hundred eighty-one dollars and forty-two cents claimed by the railroad company.

"If, under the tariffs, the car which was stopped at Tuscaloosa was entitled to move from Kenosha to Meridian with the right of stoppage for partial unloading at Tuscaloosa, at the through rate of seventy-eight cents, then the full amount of freight has been paid. If under the tariffs the railroad company is required to collect freight on the shipment from Kenosha to Tuscaloosa at the tariff rate applying to a shipment from Kenosha to Tuscaloosa, and then to collect the local rate from Tuscaloosa to Meridian, on the shipment remaining in the car after partial unloading, which moved from Tuscaloosa to Meridian, then Hulett owes the one hundred eighty-one dollars and forty-two cents sued for."

Section 6(1), U. S. C. A., title 49, provides that tariffs shall state separately all privileges granted or allowed, and, in section 6(7) of the act, it is provided that no carrier shall participate in the transportation of the property unless the rates and charges therefor have been filed and published in accordance with the statute; "nor shall any carrier charge . . . or collect . . . a greater or less or different compensation for such transportation of . . . property, or for any service in connection therewith, . . . than the rates . . . and charges . . . specified in the tariff filed and in effect at the time . . . nor extend to any shipper or person any privileges or facilities in the transportation of . . . property, except such as are specified in such tariffs."

Appellant's contention is that, under the Interstate Commerce Act, it was prohibited from extending to appellees the unloading privilege at Tuscaloosa, a point

short of the destination of the car, and then moving the car with the remaining load on to Meridian under the through rate of seventy-eight cents per one hundred pounds.

It clearly appears that, under the Interstate Commerce Act, the unloading privilege at Tuscaloosa extended by appellant to appellees was illegal. The tariffs permitted no such privilege. Both the appellant and the appellees were affected with notice of the tariffs, and are presumed to have known the law; and, of course, that is true of the initial carrier.

Nevertheless, it is well known that the common carrier railroads of the country have much more thorough and accurate knowledge of their schedules of rates than have the shipping public. As a rule, the tariffs are initiated by the railroads after having been prepared by railroad tariff experts, while the shipping public, with probably few exceptions, have no tariff experts to advise them. Still, as stated, both the railroads and the shipping public are affected with notice of the requirements of the Interstate Commerce Act, and the tariffs in force thereunder.

However, there is nothing in the record in this case to indicate that the unloading privilege was not extended to appellees in perfect good faith. Both parties doubtless believed that, under the tariffs, such a privilege was allowable. There is always a presumption in law of right doing, not wrong doing.

The appellees, under the through rate of seventy-eight cents, could have had the entire shipment delivered to them at Meridian, and then reshipped back to Tuscaloosa from Meridian the goods that were unloaded at the former place on the stop-over privilege. If that course had been pursued, the appellees would have been liable for the through rate of seventy-eight cents from Kenosha to Meridian, plus the local rate from Meridian to Tuscaloosa on the part of the car shipped to the latter place. Instead of these two rates, the appellant is seeking to re-

cover the aggregate local rates of all carriers from Kenosha to Tuscaloosa on the car partially unloaded at the latter place, and, in addition, the local rate from Tuscaloosa to Meridian on the balance of the load, which combined rates aggregate materially more than the through rate on the car from Kenosha and the local rate from Meridian back to Tuscaloosa on the goods there unloaded.

We know of no authority either for or against so holding, but it appears to us that it would come nearer doing natural justice to hold the appellees liable for the through rate on the car from Kenosha to Meridian, plus the local rate on the goods removed from the car at Tuscaloosa, from Meridian back to Tuscaloosa. We think to so hold is justified by the fact of the appellant's superior position and knowledge over appellees in reference to the tariffs, and that such result will be more just than the one contended for by appellant.

Appellees contend that the appellant ought to be driven to suit for the undercharge against the initial carrier at Kenosha, which illegally inserted the stop-over stipulation in the bill of lading covering the shipment. The trouble about that position is that it would not meet the requirements of the Interstate Commerce Act. There would still exist a discrimination in favor of appellees against other shippers. Other shippers, under like conditions, would be required to pay the aggregate of the local rates from Kenosha to Tuscaloosa, plus the local rate from the latter place to Meridian on the balance of the load in the car. Plainly, such a discrimination is prohibited by the Interstate Commerce Act, and would not be remedied by driving the appellant to a suit for the undercharge against the initial carrier.

The judgment is therefore reversed, and the case remanded to the circuit court, where it appears from the record that the necessary calculations can be more conveniently made and proper judgment entered.

Reversed and remanded.