WHITAKER *et al. v.* DAVENPORT *et al.*

(Division A. Nov. 2, 1942.)

[10 So. (2d) 202. No. 35045.]

524

Brandon & Brandon and **L. A. Whittington,** all of Natchez, and **E. S. & J. T. Drake,** of Port Gibson, for appellants.

**B. D. Wade** and **Alexander & Satterfield**, all of Jackson, for appellees.

Argued orally by **Gerard Brandon** and **L. A. Whittington**, for appellants, and by **B. D. Wade** and **Jas. A. Alexander**, for appellees.

**Roberds, J.,** delivered the opinion of the court.

This bill in equity by appellees seeks to fix and impose a money decree upon Mrs. Anna D. Whittaker and her bondsmen as administratrix, and upon Mrs. Whittaker and Mrs. Clara N. Darden individually as the sole heirs at law, of Charles B. Darden, deceased, and for sale of the lands of the estate for credit on such decree.

The foundation of the obligation, according to the contention of appellees, is a trust resulting from an express oral agreement had between Charles B. Darden and his sister, Elizabeth, and brother, Jesse Darden, in the year 1920.

Appellants, as defendants in the lower court, by demurrer and several special pleas, set up (1) that the alleged agreement created the relation of debtor and creditor and not a trust; (2) that there is no equity on the face of the bill and it states no cause of action; (3) that its allegations are too vague and indefinite to entitle complainants to relief; (4) and especially pleading Section 1672, requiring claims against estates of decedents to be probated within six months after the first publication of notice to creditors, (5) Section 2299, the three-year statute of limitations, (6) Section 2292, the six-year statute of limitations, and (7) Section 2316, the ten-year statute of limitations, all in Mississippi Code of 1930. The chancellor held that the defenses were insufficient in law and granted an appeal to this court to settle the principles of the cause.

The bill describes the agreement in these words:

"That Clarence Darden died having a fixed place of residence in Claiborne County, Miss., on or about March 15th, 1920, leaving as his only heirs his brothers and sisters, to-wit: a sister, Elizabeth Darden, a sister, Mrs. Mary Davenport, a brother, Charles B. Darden, a brother, Willie Darden, and a brother, Jesse H. Darden. That at the time of the death of the said Clarence Darden the said

Charles B. Darden and the said Clarence Darden were partners in a mercantile business known as Darden Brothers, which was located at Pattison, Mississippi. Such parties were joint owners of the business each having a one-half interest therein, and such business was then of the value of the sum of $100,000.00. That upon the death of the said Clarence Darden, his said heirs met and valued the estate and determined that the value of the assets of the said estate of Clarence Darden, deceased, amounted to $50,000.00, and there being five heirs to said estate each heir was entitled to $10,000.00 as his or her share of the said estate.

"That such heirs agreed upon such valuation, and that the said Charles B. Darden being the surviving partner of the business made full and complete settlement with the said Willie Darden and Mrs. Mary Davenport either by payment of such sum to them or by payment of part thereof and taking credit for any amounts which might have been due by said parties to the said partnership or the said Charles B. Darden."

It then states that Elizabeth and Jesse Darden were frugal persons, unmarried, living together, engaged in raising hogs, sheep, cattle and horses, and growing vegetables and crops, residing in the old home which had belonged to their father; that they had no expense or obligations other than their own sustenance, and did not need the money "to which they were entitled upon the death of their said brother, Clarence Darden."

The bill further says:

"That upon the distribution of the said estate of said Clarence Darden, deceased, the said Elizabeth Darden and Jesse H. Darden each agreed with the said Charles B. Darden, the surviving partner, that he would hold the said sum to which they were entitled as an express trustee for their use and benefit, using the same in his business by agreement and managing it for them with the express understanding and agreement that the inter-

est thereon or income therefrom, in so far as it was needed, would be utilized for their maintenance and sustenance; and upon the further agreement that such trust should continue as an active trust until demand was made by them for the payment of the principal or that portion of the interest which was not needed to be utilized for the purposes above stated.

"That such trust continued throughout the lives of the said Elizabeth Darden and Jesse H. Darden, and throughout the life of the said Charles B. Darden has continued to this date through the responsibility of the heirs and the administratrix of the said Charles B. Darden, who is now deceased.

"That no demand was made by the said Elizabeth Darden or Jesse H. Darden that the funds so held in trust by the said Charles B. Darden should be paid to them, other than that portion of the interest or income upon said sums which was utilized by them for their sustenance and support."

Reference will later be made to other pertinent allegations of the bill.

After this agreement was had, the following events, as shown by the bill, occurred:

In 1923, Willie Darden died intestate, leaving as his heirs three children, R. S. Darden, Mrs. Spencer and Mrs. Patterson. There was no administration on his estate.

On March 31, 1930, Elizabeth Darden died intestate, leaving as her heirs her sister, Mrs. Davenport, and her brothers, Charles and Jesse Darden, and the heirs of Willie Darden. There was no administration on her estate.

On November 29, 1930, Jesse Darden died intestate, his heirs being his brother, Charles, and sister, Mrs. Davenport, and the heirs of Willie Darden. There was no administration on his estate.

On March 9, 1937, Charles Darden died intestate. His heirs were Mrs. Clara Darden, his wife, and Mrs. Whit-

aker, his daughter. On March 17, 1937, letters of administration on his estate issued to Mrs. Whitaker. She executed bond for $35,000, with Clara Darden and J. D. Whitaker as sureties thereon. The administratrix promptly gave due notice to creditors. On July 2, 1938, the administratrix made a report to the chancery court, which was in the nature of a final account, which was duly approved by the court. The account showed, and the decree found, that all probated claims, all taxes and expenses and costs of the administration, including attorneys fees, had been paid, and that the time for probating claims had "long since passed." It ordered that the administratrix and her bondsmen be discharged from further liability, but for some reason not stated the administratrix was not finally discharged, but was relieved of the duty of making any further report "until further ordered by this court," and her bond was reduced to one thousand dollars.

In 1939, Mrs. Davenport died intestate, leaving as her heirs six children, Joseph, George and Mary Davenport, and Mrs. Seale, Mrs. Hammer and Mrs. Strong.

It is therefore seen that all five of the original brothers and sisters had died, and that the existing descendants of these were the heirs of Willie and Mrs. Davenport and the widow and daughter of Charles.

The original bill was filed July 2, and the amended bill July 10, in 1941. The complainants are all of the children of Mrs. Davenport, except George, and of Willie, except R. S. Darden. These two excepted children are made nominal defendants.

The bill states that all of the personal property of the estate of Charles Darden had been distributed.

The primary question is whether this bill sets out a trust or a debt. We think it lacks the essentials of a trust and describes the relation of debtor and creditor, but we do not decide that question, because we are of the further opinion that the obligation, whether a trust or a

debt, is barred by the several statutes of limitation hereinafter discussed.

We think this suit is barred by Section 2316, Code of 1930, requiring that "Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . .," except as to persons under disability. This suit was filed more than twenty-one years after the agreement was had and more than ten years after the deaths of the beneficiaries. If it be said that the trustee has a reasonable time after demand within which to make settlement, there was ample time for that in the more than seven months in excess of the ten years before suit.

The purpose of the agreement was to meet the needs of Elizabeth and Jesse during their lives, and the object expired upon their deaths and such deaths matured the obligation. Appellees undertake to avoid this by alleging:

"That during the lifetime of the said Elizabeth Darden and Jesse H. Darden the said trust continued as above alleged, and after the death of the said parties the same continued for the benefit of the heirs of said decedents; that the said heirs of the said decedents (other than the said Charles B. Darden), were the sister or the nieces and nephews of the said Trustee, and looked upon him as the head of the family and trusted him implicitly to continue the said trust and to fulfill the same in accordance with all of its terms and conditions.

"That the said Trustee has never disaffirmed the said trust or taken any action whatsoever evidencing any claim adverse to the existence thereof. That the said heirs feeling that the said Charles B. Darden would not breach the trust, but at some convenient and proper time would provide for the distribution of the trust estate, made no demands upon the said Trustee for a settle-

ment thereof, but were willing for the same to continue, and did allow the same to continue up to the time of his death.''

Boiled down, and construing this strictly against the pleader, as we must, it means that there was no agreement or understanding between Charles Darden and the heirs of Elizabeth and Jesse Darden, who, by the way, were Charles himself and Mrs. Davenport and the three children of Willie. After termination of the arrangement and maturity of the obligation, it was necessary to have an affirmative understanding to bring into being a new obligation on behalf of Charles Darden. The foregoing allegations simply mean neither party said or did anything. It was not necessary for the trustee to repudiate the trust to set the statute running.

The claim was not probated against the estate of Charles Darden. Section 1672, Code of 1930, requires all claims, whether due or not, to be registered, probated and allowed within six months of the first publication of notice to creditors; otherwise, they are barred. Appellees say it did not have to be probated if based upon a trust. That would be true if this were an effort to seize, repossess, enforce a lien upon, or trace specific trust property. That is not the case. The very object of the bill is to impose a general money decree against appellants and for sale, through a commissioner, of the lands of the estate because there is no undistributed personal property. It is not claimed that there is any lien on the land. The remedy is that of a general creditor to collect out of the general assets. It is said in 24 C. J. 334, Sec. 956, that: ''The statutory requirement of presentation does not apply to the claims of a cestui que trust for whom decedent was trustee as long as the trust fund or property can be traced and the trust enforced by suitable proceedings, but where the fund or property cannot be traced and the cestui que trust seeks redress as a general creditor of the estate, he must present his

claim." See also 11 R. C. L. 194, Sec. 213; 21 Am. Jur. 581, Sec. 353; Esslinger v. Spragins et al., 236 Ala. 508, 183 So. 401; Davis v. Shepard, Adm'x, 135 Wash. 124, 237 P. 21, 41 A. L. R. 163, and annotation page 169. It is true that, in addition to the method of enforcement, some of these cases involve the fundamental right of recovery based upon the misappropriation or wrongful mingling of trust funds, or upon other wrong or tort by the trustee, in dealing with trust property, or his concealment of the wrongful act. None of those questions are here involved, nor is the question of secondary liability presented. Darden was primarily and directly liable and by the very terms of the oral contract had the right to use the money in his business, which business, apparently, ceased to exist many years ago. "Claims required to be probated are such as if paid by the executor administrator would prima facie entitle him to credit therefor." Hancock v. Pyle, 191 Miss. 546, 3 So. (2d) 851, 853. This claim is for a definite sum of money, and, if established, would have been paid out of the personal property of the estate had there been sufficient personalty, with which property the administratrix was charged, and she would have been entitled to credit for the payment. Nonclaim statutes should be strictly enforced. The purposes of nonclaim statutes are (1) to furnish the legal representative with evidence of the validity of the claim; (2) give him an opportunity to contest the same; and (3) enable him to justify the payment and be allowed credit therefor in his account. Flynn v. Driscoll, 38 Idaho 545, 223 P. 524, 34 A. L. R. 352. The justice and wisdom of the statute are shown in this case. Here is an effort to hold the legal representative and her bondsmen and the heirs liable, more than three years and a half after the death of the intestate, and after the estate had been administered and the personal property distributed, on a claim of which they never heard in the administration proceeding.

Appellees say that partners and the like can be required to account and are not within the statute. Harris v. Hutcheson, 65 Miss. 9, 3 So. 34. But this is not a proceeding for an accounting, nor is a discovery asked. The prayer is for the principal with six percent interest. Nor does the amount of the recovery depend upon the manner of handling the money. What he did with the money; how he handled it, whether prudently or carelessly, wisely or foolishly, is no concern of appellees. His liability did not depend upon fidelity or infidelity to a trust; he was under duty to repay a certain sum when demanded, regardless of how he had used it.

Nor can we see any reason why this obligation is not within the provisions of Section 2299, said Code, requiring actions on unwritten contracts to be commenced ''within three years next after the cause of such action accrued, and not after.'' The foundation of this obligation is an express oral agreement. It is not claimed that anything was done after the death of Charles Darden to keep alive, or revive, or renew, the agreement. This suit was filed more than three years and six months after notice to creditors was given.

Reversed and remanded.