MITCHELL *v.*
ATLAS ROOFING MANUFACTURING COMPANY, et al.

No. 42517          January 21, 1963          149 · So. 2d 298

*Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*Carter & Mitchell,* Jackson, for appellees.

APPELLANT IN REPLY.

McElroy, J.

This is an appeal from a judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, whereby the amended declaration of the appellant, Mitchell, was finally dismissed upon demurrer which was sustained, and refusal of plaintiff to plead further. An appeal was allowed in the order of dismissal. The question arises as to whether the declaration, as amended, states a cause of action, and the merits of the appeal depend on the allegation of the original and amended declarations.

The question may be stated as to whether the amended declarations are sufficient at law to establish that the appellees have done an actionable wrong to the appellant, in selling roofing manufactured by appellees to certain purchasers of roofing to whom appellant had previously sold roofing manufactured by appellant's prior employer, under a contract between appellant and his employers which entitled appellant to the commission on the sales made to such customers.

The declarations state that under date of the 3rd day of September, 1959, the plaintiff entered into a contract with Web-Cote Felt Paper Company, Inc. and Manufacturers Sales Company, Inc. whereby he became sales agent for the products of the corporation for a period of five years. This contract in part is as follows:

"Principal does hereby employ said Agent to commence sales work and activities for Principal on October 1, 1959. Agent shall be the non-exclusive sales representative of Principal, and shall devote a reasonable portion of time weekly to the promotion of sales of the products of Principal.

"This agreement shall be valid and binding for a period of five (5) years.

"Agent will care for all his own travel and other expenses and will be paid a commission as his sole com-

pensation, which shall be and is fixed at 5% on net sales, after freight, made by Agent for Principal.

"Agent agrees that he will not receive any commission on sales on such existing accounts or new accounts opened by a factory representative of Principal, as may be designated on lists furnished by Principal, provided such lists be acknowledged by initial or signature of Agent.

"As to all new accounts sold by Agent he shall be entitled to the commission above provided, during the remainder of the term of this agreement, on future shipments to such accounts, no matter whether sales were made by him or otherwise.

"Agent agrees and covenants that he will not sell, promote or handle any competing line of products during the term of this agreement, and will strive to keep accounts current on payments.

"This contract shall be fully binding upon the parties, their heirs, successors and assigns, except that no other person except Agent shall be entitled or required to render sales services hereunder."

The declaration alleges seven customers for appellant to which he sold roofing. It further alleges that during the month of December, 1960, by lease dated the 21st day of December, 1960, the said Manufacturers Sales Company and the Web-Cote Felt Paper Company, Inc., which are subsidiary companies, and the Leopard Roofing Company, Inc., the parent or holding company, leased their factory area and the machinery and equipment located in Meridian, Mississippi to the Mississippi Industries, Inc., and ceased to manufacture roofing and related materials at said location.

The Mississippi Industries, Inc. began operations at said place and thereafter manufactured and/or distributed roofing and related supplies at or from said location, and its activities in this regard were carried on through its subsidiary corporation, Atlas Roofing Manu-

facturing Company, Inc., the defendant, or appellees in this case. In January, 1961, in Jackson, Mississippi, the appellant went to see Warren Hood, President, Mississippi Industries, Inc., to talk with him about the contract held by complainant with said lessors, Web-Cote Felt Paper Company and Manufacturers Sales Company, and advised him of his desire to continue to work under the terms of the contract with defendants, or appellees. A copy of the contract was shown to appellees. It is alleged that they were all acting as agent of the Mississippi Industries, Inc., its parent or holding company, controlling Atlas Company; that the said Atlas in January, 1961 assumed to act, and did act, as successors in business of lessors, and did willfully, deliberately, fraudulently and deceitfully, and without authority, wrongfully assume to use the record books or information which belonged exclusively and confidentially to the lessor-corporation, and which they were not entitled to divulge to a list of customers obtained by plaintiff for them, the defendants, through such trickery and deceit; that knowledge of the accounts and business dealings of the lessor-corporation with the said customers obtained by plaintiff was secured in a wholly unauthorized and wrongful manner, and was used to the damage, detriment and great injury of plaintiff, and for the unjust and great enrichment of defendant.

Plaintiff alleges that by said acts, defendant Atlas and its parent corporation, Mississippi Industries, Inc., are guilty of fraud, deceit, conspiracy and malicious injury of the plaintiff, and thereby of unjust enrichment of themselves by their said wrongful acts; that they well knew and fully understood the tortious and illegal nature of their acts and were chargeable with the rights of complainant in this regard on and after January 19, 1961, and prior thereto; and that, by their said wrongful acts and unjust enrichment of themselves through said illegal and fraudulent taking and using

of the confidential list of customers of plaintiff, they have become liable to plaintiff.

Plaintiff alleges that by and through wrongful and illegal use of the confidential list of customers by defendants, based upon sales made to their customers, defendants have realized profits from and on account thereof in excess of $4,000.

The amended declaration shows that the said contract is entitled "Factory Agency Agreement," and is of record in Book 169, p. 155 of the Deed Records in the Office of the Chancery Clerk of Lauderdale County, Mississippi, having been filed for record on October 19, 1959. Defendants have had actual and constructive notice of the said contract at the time complained of. After the contract was entered into, the other parties could not have revealed a list of the customers of J. H. Mitchell to competitors, or any other parties, except by or through an attempt to damage their own business and the business of J. H. Mitchell, so long as they continued in business. At the termination of their business and manufacturing activities, they were without any right, legal or equitable, to disclose a list of customers brought to them by Mitchell under the contract. As between them, the list was confidential, and could not be made known to outsiders, as prospective customers, by any of the parties to the contract. Said contract would not have been entered into or agreed upon by Mitchell except upon the basis of fair dealing and mutual rights as to the names of the customers and the mutual exclusive right of the said list of customers.

Consequently, defendants had no right to acquire, take or use the said list, either with or without permission, or consent of the said other parties to the contract, except by further consent and permission of Mitchell, which has never been given.

Plaintiff is not claiming any contractual rights against defendants, but is demanding a recovery for profits

wrongfully made and realized by defendants through the pilfering or unfair and wrongful acquisition of the confidential list of customers belonging to said other parties to the above-mentioned contract. The damages or recovery sought are comparable to, or of similar nature, to damages allowed against parties who pilfer or wrongfully obtain and use trade secrets.

The opinion of the court states, in part, that:

"Early in September, 1959, plaintiff made an agreement with the two described companies, whereby he would sell the products to certain clients of his, and certain other people whom he might induce to become clients. . . .

"Sometime in the month of December, the said Web-Cote Paper Company and Manufacturers Sales Company, Inc. leased all of their equipment or factory and plant to defendants. There was some discussion at the hearing of their insolvency, but nothing in the pleadings about same.

"The contract entered into in September, 1959 between plaintiff and Web-Cote Felt Paper Company and Manufacturers Sales Company, Inc., was a written contract which did not name any party or parties as a client or clients of plaintiff, or as purchasers to whom he could make sales. It merely provided that he had a right to make these sales at a fixed commission to any clients he already had and any other clients he procured in the future. . . .

"After Web-Cote Paper Company and Manufacturers Sales Company leased all of their equipment and plants to defendant, plaintiff approached officers of the defendant-company and procured the contract and demanded settlement for the sale to a list of people claimed to be his clients and claimed by him to have been furnished by the original parties with whom he had contracted. The officers of defendant-company appeared to be ignor-

ant of the contract or its contents and declined to make such payments.

"It is a well known fact that an agent, employee or associate of a company which comes into possession of trade secrets or formulae peculiar to the trade, essential to the manufacturer of the products involved, cannot leave the company and build up a rival organization and use the material and information so gained. To do so is a breach of trust, and is actionable both in law and equity. However, that does not seem to be the case here. There appears to be no similarity of the facts of such cases and the case involved. Defendant in this case purchased the material and equipment they leased from the aforesaid companies. So far as the declaration shows, they had no knowledge of the contract made exhibit to the declaration, and even if they did it is doubtful if a cause of action would lie. They were innocent purchasers for value without notice. Therefore the demurrer will have to be sustained."

Thus, it will be seen that appellant charged in his amended declaration that appellees learned of the identity of the customers acquired by appellant, or his employer, by means of examining the books and records of the employers and determining therefrom who the customers were. Appellant himself charged that such books and records from which the information was obtained "belonged exclusively and confidentially" to appellant's employers.

The amended declaration is wholly lacking in any allegation that appellees did not have the consent or permission of the owners of such books and records in the examination thereof to determine the names of the customers. Certainly there would be no presumption or inference to that effect, for the presumption is that "all men act fairly, honestly and in good faith," and that the conduct of the men was "lawful and in accordance with the rules of morality." 20 Am. Jur., p. 223,

Sec. 229, and 20 Am. Jur., Secs. 221, 226. Also, see Darden v. American Bank & Tr. Co., 158 Miss. 742, 130 So. 507; Alabama Gr. So. Ry. Co. v. F. A. Hulett & Son, 159 Miss. 333, 131 So. 814; and Foster v. Wright, 240 Miss. 566, 127 So. 2d 873.

Paragraphs 6 and 7 of appellant's amended declarations conclude that the acts of appellees in obtaining a list of customers from books and records from appellant's employer was wrongful, improper and unauthorized. Appellant, in Paragraph 7 of this amended declaration then attempts to support his conclusion that the acts of appellees were wrongful by assigning some reason in support of such conclusion. The reason so assigned is partially a conclusion of law and partially an allegation of fact. Appellant, in Paragraph 7 of his amended declaration, asserts a conclusion of law that his employers could not rightfully, equitably or lawfully furnish appellees information from their books and records "except by the consent of defendant." Appellant then alleges the fact upon which he relies to establish that appellees' actions were wrongful, illegal and fraudulent, the sole fact being that appellees did not obtain consent to examine the books and records of his employer. Appellant's allegations are to this effect: That all such information as to said customers and accounts obtained from or through said lessor companies or any of them was wrongfully, illegally and fraudently obtained since plaintiff did not consent thereto and did not have knowledge that such information had been thus wrongfully released to the defendants.

The factual basis for appellant's conclusion of law that the acts of appellees was wrongful, fraudulent and illegal is that the appellees examined the books and records "which belonged exclusively" to appellant's employers without his consent. In other words, the alleged wrong, fraud and illegality of appellees' action was ex-

amining the books and records of appellant's employer without his consent.

(Hn 1) On demurrer, a declaration is construed most strongly against the pleader and is not to be aided by mere inferences from its averments. Way v. McMahon, 182 Miss. 592, 182 So. 99; Aponaug Mfg. Co. v. State Tax Commission, 190 Miss. 805, 1 So. 2d 763; Taylor v. Twiner, 193 Miss. 410, 9 So. 2d 644; Whitaker v. Davenport, 193 Miss. 523, 10 So. 2d 202.

(Hn 2) A demurrer admits only material facts that are well pleaded and does not admit mere recitals of conclusions, either of the fact or of law. Barnes v. Jones, 139 Miss. 675, 103 So. 773; Edmonds v. Delta Democrat Pub. Co., 230 Miss. 583, 93 So. 2d 171; Griffith's Miss. Chancery Practice, 2d Ed., Sec. 288, p. 272.

In the appellees' demurrer to appellant's amended declaration, they unquestionably admitted that the appellant's factual allegations that appellees had obtained the information with regard to the identity of the customers in question by examining the books and records of appellant's employer, and that such examination was made without appellant's consent. They did not, however, thereby admit the merit of appellant's conclusion that in law such fact would be sufficient to establish that appellees' act was either wrongful, illegal or fraudulent. Rather, by their demurrer, appellees attacked the merit of appellant's conclusion with regard to the facts alleged.

Thus, by their demurrer, the appellees admitted that appellant and his employers had entered into a written contract, in which the employers obligated themselves to pay a commission on the sales of roofing which they made to new customers obtained by appellant.

From the pleadings and the contract in this case, we may summarize that the appellees have made the following admissions in their demurrer:

Appellant had a written contract with his employers in which his employers agreed to pay appellant a commission on all sales of roofing to new customers obtained by him.

Appellant obtained new customers for his employers and was paid a commission on such sales until his employers ceased manufacturing roofing.

Appellant's employers kept books and records which reflected the identity of customers from whom he was obtaining orders for the sale of roofing.

After appellant's employers ceased manufacturing roofing, the appellees leased from appellant's employer, the roofing factory and machinery and equipment.

Appellees, without the consent of appellant, examined the books and records of appellant's employer, and from such records obtained information with respect to the identity of customers of appellant's employer, and appellees sold roofing to such employers, including the customers whose names had been obtained from appellant's employers by appellant.

Appellant informed appellees of the fact that he had a contract with the parties from whom they had leased the roofing plant, and of the fact that appellant desired to continue to work under the contract with appellees.

Appellees read the contract and immediately advised appellant that they were not bound by the contract and would not ratify or adopt the contract.

Appellant was not able to continue to sell his former line of roofing because the said lessors had temporarily ceased to manufacture same and make same available, and after some months it appeared that they may never return to the manufacturing of roofing.

This is a summary of what is before the Court on this demurrer. The facts are admitted by the demurrer, and with these facts the Court must determine whether appellant has stated a cause of action against appellees by his amended declaration.

From appellant's declaration, the defendants were not parties to the contract sued on and have never ratified or adopted the contract. To the contrary, the allegations of appellant's amended declaration affirmatively reflect that when the contract was called to the attention of appellees, the appellees immediately advised him that there was nothing that could or would be done by Atlas or Mississippi Industries, Inc. by way of recognition of any right of plaintiff in connection with the contract.

In other words, there was no privity of contract that existed as between appellant and appellees.

In Griffith's Outlines of the Law, p. 221, it is said: " . . . it is obvious as a general rule no person is bound by a contract except the parties thereto and that no person is entitled to any rights thereunder or may have any liability cast upon him thereby unless as a party he has agreed thereto."

In 12 Am. Jur., Contracts, Sec. 265, p. 812, it is said: "The obligation of contracts is in general limited to the parties making them. Only those who are parties are liable for breach of a contract. Parties to a contract cannot impose any liability upon a stranger to the contract under its terms."

(Hn 3) 17 C.J.S., p. 1143, Contracts, Sec. 520 states: "As a general rule an action on a contract cannot be maintained against a person who is not a party to it."

17 C.J.S., p. 1145, Contracts, Sec. 522, states: "A contract cannot impose any contractual obligation on one not a party to it."

(Hn 4) The contract sued on in this case did provide that "this contract shall be fully binding upon the parties, their heirs, successors and assigns." However, the rule of law as above announced in the above quoted authorities is fully applicable to a contract containing such a provision and a successor or assign of one of the contracting parties does not become bound by the

contract unless he ratifies or adopts the contract. To such effect see the case of Johnson v. Coleman, (Ct. of App. of Kentucky, 1956), 288 S.W. 2d 348, 349. There the plaintiff Johnson made a contract with the Marrowbone Coal Company under which contract, in the words of the court, "Johnson should have the right to control the transportation and haulage of all coal in a boundary of 391 acres, which were under lease by Marrowbone whether said mine or mines are operated by Marrowbone or any of their sublessees." Johnson and Marrowbone both performed the contract for a while and then Marrowbone assigned and sub-leased his coal lease to various other operators who refused to permit Johnson to perform his contract. Johnson sued the sub-lessees for damages for breach of contract alleging that the sub-lessees knew of his assignment and were bound by it at the time they acquired the leasehold interest from Marrowbone. The defendants moved to dismiss on the ground that the complaint did not state a claim upon which relief could be granted. The motion was sustained by the lower court and on appeal this action of the lower court was affirmed, the appellate court saying:

"It is a rule of general acceptance that the obligations of a contract are limited to the parties thereto and can not be imposed upon a stranger to the contract." Ewell v. Best, 177 Ky. 673, 198 S.W. 4. This is particularly so where the contract is one for services. The fact that one of the parties intended that the successor of the other party should be bound thereby can not make the successor liable. 12 Am. Jur., Contracts, Sec. 265. The contract must be governed and controlled by the general law of contracts in respect to its operation, performance or breach and the remedies to the parties thereto (cites authorities). In the Johnson case, supra, there was no privity of contract between Johnson on the one part and the successor mining operators or sub-lessees on the other part. There was no allegation in

the complaint of the adoption of the contractor of any act which may have lead Johnson to believe that any of these parties had assumed its terms.

". . . Here we do not have any instrument affecting the title to or running with the mining lease but a contract for services to be rendered the Marrowbone Coal Company in hauling coal. This did not run with the land or constitute any sort of encumbrance."

And to the same effect is the case of Jenkins v. City Ice & Fuel Company (Sup. Ct. of Fla., 1935), 160 So. 215, 217. There one T. H. Newman owned an ice manufacturing business carried on under the name Captain Tom's Ice Company. Newman, as party of the first part, entered into a contract with Jenkins, as party of the second part, under the terms of which Newman agreed to sell to Jenkins and Jenkins agreed to buy from Newman all of the ice Jenkins needed in his retail ice business. The contract provided "It is further understood and agreed that this contract shall be binding upon and inure to the benefit of the heirs, successors or assigns of the party of the first part."

Subsequent to the date of the execution of this contract, Newman sold his ice manufacturing business, all assets thereof including the good will and all contracts to the defendant City Ice and Fuel Company. The defendant City Ice and Fuel Company refused to carry out the contract with Jenkins and Jenkins sued defendant contending in the first count of his pleading that by virtue of the purchase from Newman of the entire business the defendant became the successor and the assign of Newman and was thereby bound by the contract. The Supreme Court held that the lower court properly sustained the demurrer to the first count of the declaration saying:

"As to the first count of the declaration, we find the last-mentioned ground of demurrer to be well taken. The mere purchase by City Ice & Fuel Company of the

good will and properties of Captain Tom's Ice Company under the circumstances alleged in that count would not per se import a liability upon and against City Ice & Fuel Company as purchaser of the business to fulfill the Newman-Jenkins contract.

"A third party is not liable as a rule upon a contract, express or implied, unless he was one of the immediate parties to the agreement or had become a party to it by subsequent agreement with the original parties. The assignment of a personal contract does not give to the other party to the original agreement a right of action against the assignee for its breach, nor is the mere assignee liable unless he has expressly agreed to become bound or has promised upon a sufficient consideration to perform for the benefit of a third party. 2 Elliot on Contracts 662, 725; 2 R.C.L. 625 et seq. So the demurrer as to the first count of the amended declaration was properly sustained on grounds 9 and 12 of plaintiff's demurrer."

Clearly in the absence of the contract between appellant and the roofing manufacturers the appellees as well as any other wholesalers of roofing would have been wholly free to sell roofing to appellant's alleged customers without violating any rights of the appellant. Of necessity all appellant's alleged rights in this case arise out of the contract made between appellant and the roofing manufacturers for that contract is the sole thing which vests in the appellant any rights whatever with respect to sales of roofing to appellant's alleged customers. Appellant neither had nor claimed any right or interest in the roofing which was sold to his alleged customers and if he is to establish a right with respect to sales of roofing to those customers he must necessarily depend upon a contract creating the right, for certainly the law does not give a salesman of a particular product a right or interest in all sales by whomsoever made to

purchasers of the product who are known to such salesman.

(Hn 5) Thus, unquestionably, when appellant claims his rights have been violated he is wholly dependent upon the contract as the source of his rights. And it is, of course, a fundamental principle of law that the appellant is vested with a good cause of action in tort only if he can establish a right in himself with respect to sales of roofing made to his alleged customers. To such effect see 1 Am. Jur. 2d, 590, Actions, Sec. 59, where the authors say:

"A cause of action arises out of an antecedent primary legal right with which the law invests a person and for the infringement of which it gives him a remedy. The right to maintain an action depends upon the existence of a cause of action which involves a combination of a right on the part of the plaintiff and the violation of such right by the defendant. It is axiomatic that there can be no wrong without a corresponding right, and no breach of duty by one person without a corresponding right belonging to some other person. The existence of a legal right is, accordingly, an essential element of the cause of action, inasmuch as a plaintiff must recover on the strength of his own case instead of on the weakness of the defendant's case, since it is his right, instead of the defendant's wrongdoing, that is the basis of recovery. That right or duty means a legal right or duty, and not a mere moral obligation which is enforceable neither in law or in equity. . . . "

And compare the language of this court in the case of Wells v. Bullock, 192 Miss. 347, 5 So. 2d 686, 687, where this court in speaking of the necessity of a plaintiff establishing a right in himself in order to make out a good cause of action made reference to:

"(T)he familiar principle that a plaintiff must recover, if at all, on the strength of his own disclosed

position and right and not upon the weakness of some particular position by defendant.''

Further, in order to establish a meritorious cause of action not only must appellant show a primary right in himself but he must also show a corresponding or correlative duty owed to him by defendant with respect to that primary right. This principle is announced in 1 Am. Jur. 2d 592, Actions, Sec. 61, as follows:

''The second element of a good cause of action is the existence of a duty on the part of the defendant toward the plaintiff, corresponding to the primary right of the latter. No one has a right of action for damages occasioned by an injury unless there is some person who is legally answerable therefor by reason of wrongful invasion of the plaintiff's rights or by breach of a duty owed the plaintiff. This duty may arise from a contract or may be imposed by positive law independent of contract; it may arise ex contractu or ex delicto . . . In any case, however, the duty must be owed the plaintiff; the breach of a duty imposed for the protection of persons in particular situations or relations, which happens to result in injury to one in an altogether different situation or relation is not, as to the latter, actionable.''

And this fundamental principle has, of course, been often recognized and applied by our Court, for example, see Georgia Casualty Co. v. Cotton Mills Products Co., 159 Miss. 396, 132 So. 73 and Gulf M. & N. R. Co. v. Sparkman, 180 Miss. 456, 177 So. 760.

Here it has already been shown that the contract in question was not binding upon appellees and that appellees accordingly did not owe appellant any contractual duty. Further, there is no statute which imposed any duty on appellees with respect to sales of roofing made by appellees to appellant's alleged customers. Thus, if there was a duty owed by appellees to appellant with respect to sales of roofing to appellant's customers,

that duty would have to arise from the relationship existing between appellant and appellees, for in determining the legal duties owed by one person to another the courts look to the relationship existing between the parties. Mullican v. Meridian Light and Railway Co., 121 Miss. 806, 83 So. 816, 818.

And when appellant seeks to establish a relationship between appellant and appellees which would give rise to a duty owed to appellant by appellees with respect to sales of roofing made to appellant's alleged customers he is again wholly dependent on the contract in question to give rise to such duty for that contract is the sole thing which established any relationship whatever between appellant and appellees or any one else with regard to sales of roofing made to appellant's alleged customers.

(Hn 6) Accordingly in this case appellant is seeking to establish the essential elements of a right on his part and a duty on the part of the appellees by depending wholly on a contract made between appellant and third parties as the source of both the right and the duty. The contract in question was not binding on the appellees and gave rise to no contractual duty owed by appellees to appellant. Appellant is thus in the position of urging that this court hold that even though the contract in question, which was the sole thing that created any relationship whatever between appellees and appellant, was insufficient to create any contractual duty owed by appellees to appellant, that such contract was sufficient to create a legal duty owed by appellees to appellant, where, as here, the sole relationship existing between parties is that arising under a contract, our court has held on at least two occasions that if the contract is insufficient to give rise to a contractual duty that it is likewise insufficient to give rise to a legal duty.

We find no property rights involved in this law suit. The contract is solely a contract for services and there-

fore these rights can not be transferred unless by another contract. Since the appellees did not enter into a contract to carry out the agreement, we are therefore of the opinion that the learned judge was justified in sustaining the demurrer. The case is therefore affirmed.

Affirmed.

*McGehee, C. J., and Lee, Rodgers, and Jones, JJ.,* concur.