662 So.2d 1111 (1995)
William Martin ROGERS
v.
Frances Gail ROGERS.
No. 93-CA-00771-SCT.
Supreme Court of Mississippi.
October 26, 1995.
*1112 Christopher A. Tabb, Brandon, for appellant.
Brent E. Southern, Upshaw Williams Biggers Page & Kruger, Jackson, for appellee.
En Banc.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
On June 15, 1993, the Hinds County Chancery Court cited William Martin Rogers (William) for civil contempt, on a motion brought by his ex-wife Frances Gail Rogers (Frances). Aggrieved, William appeals to this Court assigning as error the following:
1) THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT SHOULD PAY CHILD SUPPORT AFTER THE CHILD REACHED THE AGE OF 21.
2) THE TRIAL COURT ERRED IN DETERMINING THE PROPER ALLOWANCE OF CHILD SUPPORT.
3) THE TRIAL COURT ERRED IN FINDING SUPPORT SHOULD CONTINUE AFTER FOUR YEARS WHEN THE ADULT CHILD WAS NOT MAKING ADEQUATE PROGRESS TOWARD A COLLEGE DECREE.
4) THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT SHOULD PAY MEDICAL EXPENSES AFTER THE CHILD REACHED THE AGE OF 21.
5) THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT SHOULD PAY ONE HALF OF ALL MEDICAL EXPENSES NOT COVERED BY INSURANCE FOR THE ADULT CHILD, WHERE THE ADULT CHILD PROVIDED NO PROOF OF WHAT INSURANCE COVERED, AND NO PROOF THAT THE CHILD PRESENTED *1113 THE APPELLANT WITH THOSE MEDICAL BILLS.
6) THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT SHOULD CONTINUE LIFE INSURANCE WITH THE MINOR CHILD AS BENEFICIARY.
7) THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES WITHOUT PROOF OF APPELLEE'S INABILITY TO PAY.

II. FACTS
William Martin Rogers (William) and Frances Gail Rogers (Frances) filed a Joint Complaint for Divorce with the Chancery Court of Hinds County, First Judicial District, on May 13, 1983. The presiding chancellor awarded a divorce on the grounds of irreconcilable differences on July 14, 1983. The couple had two children, Kimberly Hope Rogers (Hope), born June 16, 1971, and William Christopher Rogers (Christopher), born February 22, 1974.
On July 1, 1983, both parties agreed to a property settlement pursuant to Miss. Code Ann. § 93-5-2 (Supp. 1993). William agreed to pay $100 per month in support for each minor child until the child had reached 18, married, became self-supporting, or became emancipated. Alternatively, William agreed to pay child support as long the children attended school or college.
William also agreed to provide hospitalization and one-half of the children's reasonable medical and dental care not covered by insurance. William agreed to list his children as beneficiaries of any life insurance policies he owned at that time.
On April 23, 1987, the chancellor increased child support to $400 per month for both children for 1987, and to $500 per month for 1988 and thereafter. On October 11, 1989, the chancellor permitted William to discontinue making child support payments for Christopher, and allowed William to make support payments directly to Hope.
On March 15, 1991, Hope and William agreed to college support payments of $400 per month of which $250 of this amount went to satisfy the previous child support order and $150 went to satisfy an arrearage of child support. By agreed court order, William paid college support directly to his daughter. Hope reached the age of 21 on June 16, 1992.
In January 1993, Hope allegedly ceased receiving child support payments. She also asserted that she never received support for any medical or dental bills. In addition, Hope contended that William had never presented her with a notice of beneficiary status for his life insurance policies.
On March 22, 1993, Frances filed a motion for contempt against William. Frances alleged that William had not paid child support as agreed. In addition, Frances alleged that William had not paid one-half of the uninsured medical and dental expenses. Furthermore, Frances alleged that William had not maintained a life insurance policy naming the children as beneficiaries.
The chancellor held a contempt hearing on June 9, 1993. Frances testified that William had neither paid child support and medical bills, nor provided for insurance as he had agreed to do. Hope testified that she had never sent the medical bills to her father, but William had notice of the unpaid medical expenses within the contempt pleading. In her college studies, Hope had sometimes enrolled for as few as nine semester hours, and passed only six hours. Hope admitted that she had been enrolled in college for four years and she anticipated another two years of college.
William countered that the property settlement did not require him to provide any medical payments after Hope reached her majority. William stated that the property settlement required him to assist the minor children in their medical and dental bills. This settlement released him from payments for medical or dental bills after the children's majority. William made the same assertion with regard to the life insurance policy.
William then asserted that the subsequent decree increasing the amount of child support released him from child support payments after majority, since it did not specify post-majority payments. William also asserted that Hope was intentionally prolonging *1114 her education, making further child support an inequitable burden on him.
The chancellor determined that William was contractually bound under his agreement to pay post-majority college support for his children while they attended school or college. Examining this agreement, the chancellor noted no requirement that the children attend school full-time.
The chancellor further interpreted the property agreement to mean that Hope was a minor child for purposes of medical and dental bills and insurance while she pursued her education. The chancellor held that William's obligation to support Hope under this agreement would last for a reasonable time. The chancellor determined six years to be a reasonable time. The chancellor decreed William should pay child support for two additional years.
The chancellor further decreed that the amount of support should be $400 per month. The chancellor also required William to pay one-half of all past and future medical bills. In addition, the chancellor ordered William to pay $1,000 of Frances' attorney fees, from a request of approximately $1,700.
The chancellor found William in civil contempt for non-payment of that child support. Aggrieved, William filed his notice of appeal to this Court on June 30, 1993. Frances cross-appealed for full payment of attorney fees.

III. ANALYSIS

1) DID THE TRIAL COURT ERR IN FINDING THAT THE APPELLANT SHOULD PAY CHILD SUPPORT AFTER THE CHILD REACHED THE AGE OF 21?

2) DID THE TRIAL COURT ERR IN DETERMINING THE PROPER ALLOWANCE OF CHILD SUPPORT?
The standard for appellate review is that the chancellor's finding is affirmed "unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." See, e.g., Crow v. Crow, 622 So.2d 1226, 1228 (Miss. 1993). Substantial evidence must support the decision. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987).[1]
This Court has held it will enforce post-majority agreements for child support, during a child's college attendance. Crow, 622 So.2d at 1230. In this case, William contracted with his wife in 1983, at the time of the divorce, and made such an agreement. Therefore, the chancellor was correct in enforcing the agreement between these two contracting parties.
William further asserts that the original agreement set "collegiate" child support at $100 per month. He argues that this amount represents his maximum obligation. He argues that subsequent court orders increasing child support did not expressly extend the increase for "collegiate" child support past majority and that the court's failure to do so ends his obligation to pay increased obligations after majority.
*1115 The chancellor found that subsequent orders increasing Hope's child support referred back to the original divorce agreement. The chancellor found that William incurred increased obligations to pay during Hope's education implicitly through each modification.
There was ample evidence in the record to support the chancellor's interpretation of the "collegiate" child support agreement. Hope testified that she received $250 per month until January 1993, six months after reaching majority. Clearly, William's actions demonstrated that he believed the collegiate child support agreement transcended Hope's majority. Furthermore, no later modifications limit the age for Hope to receive support. William himself entered an agreed order on March 15, 1991, obligating himself to pay $250 per month child support to Hope. William agreed to pay this amount "in accordance with the applicable Divorce Decree."
In addition, William's attorney stated that child support was indeed $250 per month. The attorney's statements constitute an admission under rule 801(d)(1)(A) of the Mississippi Rules of Evidence. As early as 1837, this Court has held that an attorney's statements are binding on his principal in limited circumstances. Wenans v. Lindsey, 2 Miss. 577, 578 (1837). Moreover, other evidence showed that William agreed to pay $250 directly to Hope after she reached majority, if she was attending college.
Furthermore, and just as importantly, this original support order was subject to increase as changed conditions arose. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). Frances could have had the order modified by court order. The fact that William agreed to this change does not allow him to argue that no court order forced him to pay that amount. This Court affirms the chancellor's finding on the post-majority award of support for Hope's college education.

3) DID THE TRIAL COURT ERR IN FINDING SUPPORT SHOULD CONTINUE AFTER FOUR YEARS WHEN THE ADULT CHILD WAS NOT MAKING ADEQUATE PROGRESS TOWARD A COLLEGE DECREE?
The indefiniteness surrounding William's agreement for support during Hope's college education is a problem. The obligation of William to support Hope while she received a college education, arising from the original property settlement, is extremely vague. The agreement contained no duration clause or minimum level of academic performance; therefore, the chancellor determined that a reasonable standard of performance. The Alabama courts have determined that such a standard for collegiate child support should include a definite time and academic progress requirement. See Kent v. Kent, 587 So.2d 409 (Ala. Civ. App. 1991) (holding trial court should set reasonable time limits for collegiate child support, and require full-time status and "C" average from child). This Court finds Kent persuasive, and suggests to attorneys in drafting future agreements to indeed be definite and reasonable in its terms regarding time and scholastic performance standards and limitations. The fact that the chancellor had to set a time limit for this support after she found William in contempt demonstrates its incompleteness.
Under usual circumstances, this Court will not find civil contempt with indefinite or incomplete terms. However, a party who extra-judicially modifies or eliminates child support payments acts "at his peril." Varner v. Varner, 588 So.2d 428, 434 (Miss. 1991). This Court should allow only minor, equitable deviations from this principle. Varner, 588 So.2d at 434. Unilateral refusals to pay child support do not qualify. Id.; see also Crow, 622 So.2d at 1231.
The chancellor was correct in determining that William could be liable for continued college support over a reasonable time during the child's post-majority. In this case, the chancellor based her opinion on Williams' agreement to support the child during his or her collegiate education. See Kent, 587 So.2d at 413. A six year period to complete college was the time set by the chancellor and is reasonable considering that the child is not a full-time student, and the child is working part-time to partially support herself in school. This Court affirms *1116 the time limitation of two additional years as reasonable.

4) THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT SHOULD PAY MEDICAL EXPENSES AFTER THE CHILD REACHED THE AGE OF 21.
William did not contractually agree to continue providing medical expenses or life insurance, during any portion of the children's majority. Trial courts or chancellors should not modify these unambiguous contracts beyond the contractual terms. Employers Mut. Cas. Co. v. Nosser, 250 Miss. 542, 569, 164 So.2d 426, 438 (1964).
In this case, the chancellor construed the terms of child support during Hope's collegiate attendance to impliedly include medical expenses and life insurance, benefits not expressly provided for in the parties' separation agreement. This finding conflicts with Mississippi law, as stated above. The property settlement obligated William only to pay these items during the minority of the children. This obligation was unambiguous. Accordingly, this Court reverses on this point and holds that the father's responsibility for medical expenses and insurance ended at the majority of the child. Any unpaid pre-majority bills would not be affected by this holding upon submission of proper proof of the accounts.

5) THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES WITHOUT PROOF OF APPELLEE'S INABILITY TO PAY.
William is correct in asserting that, in divorce cases, a chancellor may not award attorney fees if the moving party can pay. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). However, the record clearly demonstrates that Frances stated that she did not have the ability to pay. William's attorney by not asking questions about Frances' inability to pay, failed to establish evidence of her financial status. As a result, the only evidence available is Frances' testimony that she could not pay.
Furthermore, this case is not about divorce. It is a civil contempt action. Courts do have the authority to award reasonable attorney fees in these actions. Hinds County Bd. of Sup'rs v. Common Cause of Mississippi, 551 So.2d 107, 125 (Miss. 1989). This power serves to make the plaintiff whole and enforce compliance with a court decree. Id. at 125.
This Court affirms the chancellor's award of attorney fees to Frances as fair and reasonable. Id. at 126. This Court allows "broad discretion" in determining an award. Id. This Court affirms awards of attorney fees in divorce cases as long as an abuse of discretion has not occurred. Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss. 1993).
Although Frances sought $1,742.65 for incurred attorney fees, the chancellor found $1,000 to be fair and reasonable as partial attorney fees. The chancellor provided no reasoning as to why she chose a partial amount. However, this Court presumes that with no findings of fact in the record, the trial court resolved all findings in favor of the appellee. Love v. Barnett, 611 So.2d 205, 207 (Miss. 1992). For this reason, the award is affirmed on direct appeal and cross-appeal.

IV. CONCLUSION
On the basis of the father's contractual agreement to continue paying child support to his adult child while she attended college, this Court affirms. William's obligation to support Hope during her college education had no time or performance limits. As a result, the chancellor was correct in interpreting the agreement to include reasonable performance and time limitations and this Court affirms. This Court also affirms the award of $1,000 for attorney fees. This Court reverses and renders on the post-majority responsibility of the father for medical expenses and insurance.
DIRECT APPEAL: JUDGMENT IS AFFIRMED IN PART; REVERSED AND RENDERED IN PART. CROSS-APPEAL: JUDGMENT IS AFFIRMED AS TO THE AWARD OF ATTORNEY FEES.
HAWKINS, C.J., and PITTMAN and BANKS, JJ., concur.
*1117 JAMES L. ROBERTS, Jr. and SMITH, JJ., concur in result only.
SULLIVAN, J., concurs in part with separate written opinion joined by JAMES L. ROBERTS, Jr. and SMITH, JJ.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J.
SULLIVAN, Justice, concurring in part:
I agree with the results reached by Presiding Justice Prather and write separately to express my view that if this is in fact a suit to enforce a contract, the more proper vehicle is not a citation for contempt, but a suit for specific performance. In that action the chancellor is limited to specifically enforcing the contract, if one exists, between the parties. In such an action there would be no temptation, as occurred here, to rewrite the contract for the parties. Nor would there be an automatic imposition of attorney's fees. In my view that is the better approach for cases of this nature.
I do not join the opinion of Justice McRae and concur in the results reached by Presiding Justice Prather.
JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.
McRAE, Justice, concurring in part and dissenting in part:
I agree with the majority's decision that the chancellor erred in finding William Rogers liable for his children's post-majority medical insurance and life insurance benefits. Our views diverge, however, on the extent to which Rogers should be held responsible for his daughter's college education and her mother's attorney fees in bringing this action. Accordingly, I dissent.
The chancellor found that the 1983 property settlement agreement required William to provide support for his daughter, Hope, past the age of majority while she pursued her education. However, especially in light of her protracted college career, the indefiniteness of the agreement is problematic. It contained no duration clause or minimum level of academic performance. We have held that when a parent has contracted to provide post-emancipation support for his child, he is bound by that contract. Crow v. Crow, 622 So.2d 1226, 1230 (Miss. 1993). By ordering William to provide continuing support for his daughter into her sixth year of sporadic, part-time college course work, however, the chancellor added new terms and provisions to the contract. In doing so, she exceeded her authority.
Courts have the authority to award reasonable attorney fees in civil contempt actions such as this. Hinds County Board of Supervisors v. Common Cause, 551 So.2d 107, 125 (Miss. 1989). However, because majority finds that the chancellor erred in granting much of the relief Frances sought, the award of attorney fees is not appropriate. Moreover, since Hope has passed the age of majority and seeks post-emancipation support, Frances did not have standing to bring this suit[1] and, therefore, should not be entitled to attorney fees. Past due child support payments vest in the child as they accrue. Tanner v. Roland, 598 So.2d 783, 786 (Miss. 1992); Varner v. Varner, 588 So.2d 428, 432 (Miss. 1991); See also Atwood v. Hicks, 538 So.2d 404, 407 (Miss. 1989) (right to support belongs to child). We have held that emancipation of the child does not preclude the custodial parent from recovering vested but unpaid support. Tanner, 598 So.2d at 786-787; Varner, 588 So.2d at 433. However, these cases involved recovery of arrearages that accrued before the child reached the age of majority. We have not found the custodial parent to be a proper party to bring suit or even to be a necessary party pursuant to M.R.C.P. 19 when pursing claims for post-emancipation support. It is the child's right to bring the suit and collect any attorney fees to which she might be entitled. See Premeaux v. Smith, 569 So.2d 681, 685 (Miss. 1990).
*1118 Because the chancellor erred in adding new terms to the agreement to provide for Hope's post-emancipation college education and the majority improperly awarded Frances $1,000.00 in attorney fees, I respectfully dissent.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] This Court notes that a standing issue potentially arises with the mother, Frances, and not the daughter bringing suit against William. By agreed order, William was obligated to make child support payments directly to Hope. Frances has no direct interest in child support for Hope.

However, the two parties, William and Frances, negotiated this collegiate support contract between themselves. Frances was a party to this contract. Hope was an intended third party beneficiary to this contract. Hope could bring the suit to enforce this contract. Moore v. Kirkland, 112 Miss. 55, 59, 72 So. 855 (1916). Frances, as an original contracting party, may also bring a suit to enforce the contract. This Court has stated that parties that agree to contracts have both rights and obligations under that contract. Mitchell v. Atlas Roofing Mfg. Co., 246 Miss. 280, 293, 149 So.2d 298, 303 (1963). The non-defaulting party is entitled to be put in the position he or she would have occupied had there been no breach. Eastland v. Gregory, 530 So.2d 172, 174 (Miss. 1988).
Therefore, Frances is entitled to the benefit of her bargain with William under the agreed order. Her pecuniary loss, for standing purposes, is the consideration she lost through the making of this bargain, regarding her right to sue for additional child support. This additional support potentially could have been gained through more litigation. See Daniel v. Snowdown Ass'n, 513 So.2d 946, 949 (Miss. 1987) (forbearance to sue can constitute consideration).
This question is a simple contract case where the original contracting party is suing to compel performance. Standing should therefore not be at issue.
[1] The majority perceives this as a contract case and suggests that Frances has standing as an original contracting party. However, child support is neither a contract nor a settlement, but a judgment. Brown v. Brown, 566 So.2d 718, 721 (Miss. 1990). It is the child, not the parent, who has the right to the judgment and its recovery.