McMILLIN, C.J.,
CONCURRING IN PART AND DISSENTING IN PART:
¶ 35. I respectfully dissent as to that part of the opinion that effectively releases Dr. Holzhauer from any obligation under the property settlement agreement to provide the reasonable college expenses of his former step-daughter, Alexa Scrog-gins. Dr. Holzhauer’s primary defense against the claim was that at the time Ms. Scroggins began her second year at the University of Southern Mississippi his financial situation had deteriorated to the extent that he could not afford to meet his obligation. A demonstrated inability to perform under a court decree is a defense to a claim of contempt. Clements v. Young, 481 So.2d 263, 271 (Miss.1985). However, a present inability to pay is not a compléte defense that excuses any obligation to perform in the future. Rather, until the obligation itself is altered by subsequent appropriate court action, the obligation continues to exist and may be enforced by reducing it to judgment or by appropriate enforcement proceedings at such time as the obligor’s financial condition has improved to the extent that he can meet the obligation. Tanner v. Roland, 598 So.2d 783, 786-87 (Miss.1992).
¶ 36. I would note that the chancellor, in ruling on the matter, ignored Dr. Hol-zhauer’s inability to pay defense, making no finding of fact in that regard. Instead, the chancellor offered two alternative reasons for finding Dr. Holzhauer’s obligation unenforceable.
¶ 37. First, the chancellor held that a commitment to pay “reasonable college expenses” was too vague because it failed to delineate the specific costs that were captured within the meaning of that term. This is plainly wrong. This Court has found similar provisions definite enough to enforce. Rogers v. Rogers, 662 So.2d 1111, 1116-17 (Miss.1995); Harmon v. Yarbrough, 767 So.2d 1069 (¶¶ 11-12) (Miss.Ct.App.2000) (holding obligor is bound by provision to “provide for said child’s higher education”). Certainly, there may be certain costs associated with attending college upon which minds might reasonably differ as to whether they were included in this descriptive term, but the core costs of matriculating at a recognized institution of higher learning — such as tuition, books, and room and board — are fundamentally a part of the cost of college attendance by any reasonable definition. One can, by brainstorming, think of examples of costs associated with attending college that are less clearly necessary to a successful education, but a recitation of those examples does not render the entire commitment unenforceable for vagueness. Neither does the fact that some of the undisputably vital costs of college may vary widely from institution to institution. The only question raised by such issues is whether, under the circumstances of the particular case, the proposed expenditure under consideration is deemed reasonable or not. That is a matter that can be resolved by appropriate litigation upon the parties’ inability to agree. Id.
¶ 38. The second reason advanced by the chancellor to refuse to enforce the agreement was the fact that the stepdaughter accused Dr. Holzhauer of sexually molesting her under circumstances that ultimately led to his indictment and subsequent acquittal. Whether Dr. Holzhauer could avoid his contractual obligation upon proving, by a preponderance of the evidence, that his stepdaughter falsely accused him of sexually improper behavior may be an issue of law upon which a court *170 could properly rule, but that issue is not before this Court on this record. The chancellor made no finding of fact as to whether the charges of sexual impropriety were false, and it is well-settled law that a judgment of acquittal in a criminal prosecution, where the burden of proof is substantially higher than in a civil suit, is not conclusive in a civil suit where the same allegations may have some relevance. Chatman v. Modern Builders, 227 Miss. 339, 344, 86 So.2d 350, 352 (1956). The majority, in affirming the chancellor, cites the case of Hambrick v. Prestwood as authority for its holding, apparently on the notion that evidence of a poor relationship between the obligor and the intended beneficiary of the payment is an appropriate ground to excuse performance. Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980). In that case, the natural father was excused from any responsibility for the costs of college for his nineteen-year-old daughter who had been estranged from him since the age of twelve. Hambrick, 382 So.2d at 477. The Hambrick case is, in my view, distinguishable since the obligation in Hambrick was not a part of a voluntary commitment on the part of the obligor in the nature of a contractual obligation as it is in the case before us. Instead, in Hambrick the claimed entitlement to payment was based solely on the legal obligation of a father to support his minor children, and the father’s obligation was excused on the ground that the normal ties of kinship giving rise to such an obligation had, on the unique facts of that case, been irretrievably broken. In the case before us, there was no indication that Dr. Holzhauer’s commitment was based on any feelings of affection for his stepdaughter or in recognition of any particular familial bonds that might have arisen during his marriage to the child’s mother. Rather, the agreement appears to be nothing more than one of several negotiated financial concessions made by him in the context of obtaining a divorce. Hambrick has no particular application because, absent Dr. Holzhauer’s voluntary agreement to pay such expenses, it would have been entirely beyond the authority of the chancellor to order such payments. Nevertheless, once Dr. Holzhauer committed contractually to make such payments, it fell within the chancellor’s authority to enforce that provision of the agreement. Varner v. Varner, 666 So.2d 493, 496-97 (Miss.1995). The fact that Dr. Holzhauer may have found his previous commitment distasteful because of the subsequent actions of his former stepdaughter is not, in my view, sufficient grounds to excuse his performance of the obligation altogether.
¶ 39. Whether Dr. Holzhauer’s cessation of payments to meet Alexa Scrog-gins’s reasonable college expenses was based on impossibility of performance brought on by his then-existing deteriorating financial condition or whether it was, in fact, based upon his determination that her post-agreement behavior toward him had voided his obligation is, to a large extent, moot at this point since neither defense appears to have merit and it is apparent from the record that Dr. Holzhauer, in his present situation, can easily defray the reasonable costs associated with Ms. Scroggins’s college attendance for the three years that he has yet to pay. This obligation should be enforced, either in the form of reimbursement for reasonable expenses already expended or in the form of prospective payments for future undergraduate educational efforts by Ms. Scrog-gins, depending on what the facts would show to be more appropriate on remand. The sole issue not mooted by Dr. Hol-zhauer’s improved financial condition is the issue of attorney’s fees for the enforcement of this provision of the divorce settlement agreement, since that would hinge, to *171 some extent, on whether Dr. Holzhauer s earlier failure to pay was wilful or based on impossibility of performance. That, too, is a matter that can and ought to be resolved on remand.
¶ 40. I would reverse and remand the chancellor’s judgment to resolve this issue along the terms set out herein where the dollar amount of Dr. Holzhauer’s obligation is determined based on proper evidence of the reasonable costs of Ms. Scroggins’s efforts to complete her undergraduate education (proper evidence of which is not, as the appellant seems to contend, demonstrated by proof of the amounts of student loans taken out by Ms. Scroggins).
¶ 41. I agree with the majority’s treatment of all the remaining issues.
SOUTHWICK, P.J., THOMAS AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.