# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01122-COA

**VAN EDWIN STEWART, JR.**                                  **APPELLANT**

**v.**

**CATHERINE H. STEWART (HALL)**                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2022 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | FRANK G. VOLLOR |
| | TRACIE DIANE HERRING |
| ATTORNEY FOR APPELLEE: | MICHAEL R. BONNER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 03/12/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.  Van and Catherine Stewart were married and had three children: Marlee Hope Stewart, Lexi Grace Stewart, and K.S.[1]  When Van and Catherine divorced in 2006, they entered into a property settlement agreement (PSA) that Catherine's attorney drafted.[2] Paragraph 3 of the PSA provided Van would pay child support to Catherine for all three children "through six (6) years of college education."  On November 16, 2021, Van filed a motion to terminate or, in the alternative, modify child support and requested reimbursement

---

[1] This child was a minor during the events at issue, and we will refer to her as "K.S." throughout this opinion for privacy.

[2] The PSA was drafted pursuant to Mississippi Code Annotated section 93-5-2 (Rev. 2004).

for college expenses and a declaratory judgment. In his motion, Van asserted that his obligation to pay child support through six years of college education ended when the children reached the age of 21. Further, Van argued his child support obligations for K.S. should be terminated because she was emancipated for cohabitating with her boyfriend without Van's approval. *See* Miss. Code Ann. § 93-11-65(8)(b)(iii) (Rev. 2018).

¶2.    The chancellor found that Van was "required to pay child support for [the] children through six (6) years of college education and that this requirement extend[ed] past the children's twenty-first (21st) birthday." The chancellor also found that K.S. did not live with her boyfriend and therefore was not emancipated under section 93-11-65(8)(b)(iii). Accordingly, the chancellor emancipated the eldest daughter, Marlee, but ordered Van to continue paying child support for Lexi and K.S. Van now appeals. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3.    On October 13, 2006, Van and Catherine were granted a divorce on the ground of irreconcilable differences. At the time of the divorce, both parties were residents of Vicksburg.[3] Van and Catherine entered into a PSA that the chancery court incorporated into a judgment of divorce. Under the PSA, Catherine was awarded "primary custody of the minor children of the parties," while Van was awarded "reasonable periods of visitation[.]" Paragraph 3 of the PSA provided the following in relevant part:

> Child Support. Husband and Wife agree that Husband will pay to Wife the sum of $730.00 as child support for the maintenance and support of the minor children of the parties. Said child support will be payable monthly beginning

---

[3] At the time of the hearing at issue, Catherine still resided in Vicksburg, while Van resided in Bellevue, Nebraska.

on the 1st day of November, 2006. Husband further agrees that the child support will increase to twenty-two (22%) of his adjusted gross income in accordance with the Mississippi Child Support Guidelines as he receives promotions in the U.S. Navy, beginning with his promotion to O-1 in the U.S. Navy. . . . **The parties further agree that said child support paid by Husband to Wife shall continue for all three minor children through six (6) years of college education.**

(Emphasis added). The PSA further indicated that "both the legal and practical effect of this [a]greement [had] been fully explained to both parties, and they both acknowledge[d] that it [was] a fair [a]greement" and that "[e]ach party fully underst[ood] the facts contained herein and is fully informed as to his or her legal rights and obligations[.]"

¶4. On April 17, 2007, the parties entered into an agreed order with a new visitation schedule.[4] In March 2012, the parties agreed to an increase in Van's child support obligation to $1,548.00 per month. The modification order provided that Van and Catherine would have "joint legal custody of the minor children[.]"

¶5. In November 2020, K.S. went to live with Van in Nebraska. While there, K.S. was given approval to complete her senior year coursework online. Van continued paying child support for all three children during this period. In May 2021, K.S. returned to Vicksburg. That summer, at the age of 17, K.S. allegedly began dating a twenty-six-year-old man named

---

[4] This agreed order was a result of the following events: Van filed a motion to reconsider or for relief under Mississippi Rule of Civil Procedure 60(b) on November 14, 2006. Catherine filed her response on January 4, 2007, and she filed a subsequent response to the motion on January 27, 2007. Van filed an amended motion under Rule 60(b) and claimed Catherine was in contempt of court for failing to provide "reasonable rights of visitation" since the parties' divorce. He requested the court to enter a "standard visitation schedule" so that he could see his children more regularly. Catherine responded to Van's amended motion on February 5, 2007. Ultimately, Van and Catherine entered into the agreed order as to visitation, and the court dismissed Van's Rule 60(b) motion.

Austin Kemp.[5]  Van protested this relationship.  The parties disputed whether K.S. ever actually moved in and lived with Austin.

¶6.    On November 16, 2021, Van filed his motion to terminate or modify child support and requested reimbursement for college expenses and a declaratory judgment.  In that motion, Van requested that the court emancipate all three of his minor children and terminate all his child support obligations to Catherine.  Specifically, Van maintained that the eldest child, Marlee, had "attained the age of twenty-three (23) years" and that Lexi had "attained the age of twenty-one (21) years[,]" so they were both emancipated and therefore "should not be the subject of child support payments received by Catherine[.]"  Van posited that K.S. was also emancipated under Mississippi Code Annotated section 93-11-65(8)(b)(iii) because she had "attained the age of (18) years," graduated high school, and "moved in with her boyfriend" without Van's approval.  Van alternatively argued that the court should "suspend or terminate child support payments" to Catherine because K.S. was not living in Catherine's home, was "supporting herself" financially,  and was "not receiving the benefits of the child support[.]"  Additionally, Van petitioned the court to enter a declaratory judgment on the "rights and obligations of the parties" with respect to the PSA.[6]

¶7.    On January 13, 2022, the hearing on the motion to terminate child support took place.

---

[5]  K.S. was not called to testify at the trial.

[6]  Van also requested credit for child support payments he paid to Catherine while K.S. was living with him in Nebraska.  Further, he requested reimbursement for one-half of Marlee and Lexi's college expenses.  The chancellor denied Van's request for credit.  The chancellor further found that the evidence was insufficient as to Van's request for one-half reimbursement and dismissed that issue without prejudice.  These issues were not raised on appeal and will not be discussed in this opinion.

4

Van called Catherine to testify. The PSA was entered into evidence. The agreed order of modification dated March 16, 2012, was entered into evidence. Catherine explained the March 2012 order increased Van's obligation of child support "when his income increased[.]" Catherine stated Lexi, was "[t]wenty-one" and was attending school at "Ole Miss" with plans to graduate in May.[7] Catherine testified Lexi "live[d] at Ole Miss" while in school, but when she was "not in school, she live[d] with [Catherine]." Catherine stated that Lexi's housing was paid for by "[f]inancial [a]id" and Van's "G.I. Bill."

¶8.     Catherine testified that K.S., was "eighteen" and graduated from high school in "May of 2021." Catherine testified she agreed to allow K.S. to stay with Van in Nebraska for five months so K.S. could "get away from a boyfriend that was stalking her[.]" While in Nebraska, from November 2020 to April 2021, K.S. "took her classes online[.]" During this time, "nothing changed" and Van continued paying child support to Catherine for all three children. Catherine testified K.S. enrolled in classes at Mississippi State University, but ultimately K.S. enrolled at Hinds Community College (Hinds) instead because she "wanted to go into radiology[.]"

¶9.     Catherine testified K.S. met her current boyfriend, Austin Kemp, during the "summertime." Catherine stated that in June 2021, she along with all three daughters, Austin, and a group of "their friends" went to the beach. At that time, K.S. was seventeen,

---

[7] The chancellor found that Marlee was emancipated, so we limit our discussion to the portions of the transcript that pertain to Lexi and K.S., the subjects of Van's appeal.

and Austin was "twenty-four . . . or twenty-three.[8]" Catherine stated she did not know if Austin and K.S. were "dating at that time[.]" She further stated she told K.S. that "they couldn't date." A photograph of K.S. and Austin from this beach trip was entered into evidence. Catherine was shown a second photograph of K.S. and Austin from the same beach trip. Catherine explained she posted this photo to her Facebook page as part of a "collection of pictures" that were posted. Catherine stated K.S. and Austin "just posed beside each other for a picture[.]" This photograph was entered into evidence.

¶10. Catherine testified that she was not happy about K.S.'s relationship with Austin but that she "can't pick anybody's boyfriend." Catherine testified Van never asked her about K.S.'s relationship with Austin, but she was aware that Van objected to the relationship. Catherine stated that K.S. told her that she and Austin "were friends." Catherine stated K.S. "did not move in with Austin" but had admitted to Catherine that she "stayed [with Austin] a few times[.]" According to Catherine, Austin lived with his parents. Catherine testified that K.S. had been working at a hair salon but "quit" the week before because she was "taking a full load of classes[,]" specifically "fifteen" hours. Catherine stated K.S. completed twelve hours at Hinds in the fall semester.

¶11. On direct examination by Catherine's attorney, Catherine testified she provided support to her daughters in the form of money, toiletries, and food. Further, Catherine stated she still paid her daughters' car tags, car insurance, "deodorant, tampons, razors, anything

---

[8] In Van's testimony, he asserts K.S. admitted to him that Austin was twenty-six during this time.

they need[ed][.]" Catherine's Rule 8.05 financial statement[9] was entered into evidence. Catherine testified she owned a paint studio where she made a monthly "salary, wage, and commission" of "fifteen hundred dollars[.]"

¶12. Van testified next. Van stated he lived in Bellevue, Nebraska. He said that after the divorce, he did "not remember agreeing to paying past the age of twenty-one for child support" but that he did understand that there was a possibility that college support would extend "past twenty-one[.]" Van testified he remarried and had two sons. Van retired from the Navy as a lieutenant commander in September 2020 because he was "diagnosed with Multiple Sclerosis[.]" Van's Rule 8.05 financial statement was entered into evidence. Van testified he was receiving military disability benefits. Van stated he earned "thirty-six months total" in "G.I. Bill" benefits and that he "divided it all evenly among [his] daughters, twelve months each."

¶13. Van testified that K.S. called him and "requested" to come stay with him in Nebraska. K.S. "lived" with Van from "November [2020] to April [2021]." During this time, Van continued paying child support to Catherine for all three children. K.S. continued high school online, with approval from the school. Van purchased K.S. a plane ticket to go to Vicksburg for "spring break." When K.S. returned to Nebraska, she told Van she was "talking to" Austin. K.S. told him Austin was "a little bit older." K.S. ultimately "admitted that [Austin] was twenty-six." Van told K.S. he "could not support that at all," and he "immediately objected" to the relationship. After that, K.S. "wasn't happy." Van testified

---

[9] UCCR 8.05.

"she was miserable enough to where I went down and bought her another [plane] ticket [to Vicksburg] for . . . her prom." After K.S. returned to Vicksburg for prom, she "didn't come back."

¶14.    Van testified that he had asked Catherine about K.S.'s relationship with Austin, and Catherine told him "they weren't boyfriend and girlfriend" and that they "weren't having sex." Van testified he later called K.S. and asked her "point blank" where she was living, and she said, "Austin's house." Van stated he "dropped the conversation there[,] and [he] believe[d] that was one of the last phone calls that [he] had with [K.S.]"

¶15.    On September 16, 2022, the court entered the final judgment. First, the chancellor found that "the Property Settlement Agreement incorporated in the parties' judgment of Divorce is unambiguous." The court found that Marlee was "emancipated," and Van's "requirement to pay child support" for her and to "provide one-half (1/2) of Marlee's college education and expenses . . . should be terminated." The court ordered that Van's obligation to pay child support "through six (6) years of college education . . . extend[ed] past the children's twenty-first (21st) birthday." The court determined that Lexi was "not emancipated" and that Van "still ha[d] the obligation to pay child support and provide one-half (1/2) of Lexi's college education and expenses." The court further found that K.S. was not emancipated and that Van's "requirement to pay child support and provide one-half (1/2) of [K.S.]'s college education shall continue for the 2021-2022, 2022-2023, 2023-2024, 2024-2025, 2025-2026, and 2026-2027 school years."[10]

---

[10] The court also denied Van's request for credit for the child support payments he paid to Catherine while K.S. was living with him; and dismissed without prejudice Van's

8

¶16. On September 26, 2022, Van filed a motion for a new trial or, alternatively, to alter, amend, or vacate the chancery court's opinion and judgment. The court denied the motion on October 18, 2022. Van now appeals from the final judgment entered on September 16, 2022, and the order denying the post-trial motion. Van presents three issues on appeal, arguing (1) that the trial court erred in ruling that Lexi was not emancipated, (2) that the court abused its discretion in ruling that K.S. was not emancipated due to her allegedly living with her boyfriend, and (3) that the court erred in ruling that K.S. would not be emancipated at age 21. We combine the first and third issues in our analysis.

**STANDARD OF REVIEW**

¶17. When reviewing "a chancellor's decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule." *Bryant v. Bryant*, 348 So. 3d 309, 313 (¶9) (Miss. 2022) (citing *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007)). "However, a property settlement agreement is a contractual obligation." *Harris v. Harris*, 988 So. 2d 376, 378 (¶8) (Miss. 2008) (citing *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986)). Contract interpretations presenting questions of law are reviewed de novo. *Bryant*, 348 So. 3d at 313 (¶9).

**ANALYSIS**

I. **Whether the chancery court erred in its interpretation that the PSA was unambiguous and the finding that Van was required to provide child support for Lexi and K.S. after they reached age twenty-one.**

---

request for credit or reimbursement for tuition payments made for Lexi and Marlee. Van does not appeal these issues, so they are not discussed in this opinion.

9

¶18.    Van asserts that the chancellor erred by extending Van's child support obligations for his daughters Lexi and K.S. beyond the age of twenty-one.  In support of this argument, Van distinguishes paragraph 3 from paragraph 12 in the PSA, which deal with "child support" and "[c]ollege [e]ducation and [e]xpenses," respectively.  Paragraph 3 of the PSA states, in pertinent part:

> Child Support. Husband and Wife agree that Husband will pay to Wife the sum of $730.00 as child support for the maintenance and support of the minor children of the parties. . . .
>
> The parties **further agree that said child support** paid by Husband to Wife **shall continue** for all three minor children **through six (6) years of college education.**

(Emphasis added).  Paragraph 12 of the PSA provides the following:[11]

> College Education and Expenses. Husband and Wife agree that Husband and Wife shall each pay one-half of any and all reasonable and necessary college expenses for the minor children to provide a college education throughout the attainment of a six (6) year college degree or equivalent. **This obligation may extend past the twenty-first birthday of any of the children.** The expenses for which the parties shall pay for the minor children will include, but will not be limited to, the following: tuition, room and board, books, student fees, and a reasonable amount of discretionary spending money after payment and use by minor children of all grants and scholarships received by the minor children.

(Emphasis added).  Van argues that the inclusion of the phrase "[t]his obligation may extend past the twenty-first birthday of any of the children" in paragraph 12 and the omission of this phrase from paragraph 3 shows a "clear design and intention to treat the two separate provisions for support differently."

---

[11]  Van's appeal does not concern the obligations provided in paragraph 12.  He uses this paragraph only to argue the intent behind paragraph 3.

¶19. In Mississippi, the duty of child support terminates upon the child's emancipation "**whether by attaining the age of majority or otherwise.**" *Crow v. Crow*, 622 So. 2d 1226, 1230 (Miss. 1993) (emphasis added) (citing *Pearson v. Hatcher*, 279 So. 2d 654, 656 (Miss. 1973); *Pass v. Pass*, 238 Miss. 449, 118 So. 2d 769, 771 (1960)). Mississippi Code Annotated Section 93-11-65(8)(a) provides:

> Unless otherwise provided for in the underlying child support judgment, emancipation shall occur when the child:
>
> (i) Attains the age of twenty-one (21) years, or
> (ii) Marries, or
> (ii) Joins the military and serves on a full-time basis, or
> (iv) Is convicted of a felony and is sentenced to incarceration of two (2) or more years for committing such felony[.]

However, our law is clear that parties to a property settlement agreement "may create an enforceable obligation for support of a child beyond the age of majority." *Nichols v. Tedder*, 547 So. 2d 766, 770 (Miss. 1989). The Mississippi Supreme Court has held that courts will enforce post-majority agreements for child support during a child's college attendance. *Rogers v. Rogers*, 662 So. 2d 1111, 1113 (Miss. 1995) (citing *Crow*, 622 So. 2d at 1230). When a parent contracts to provide such support, the court will require that parent to honor that agreement. *Crow*, 622 So. 2d at 1230. Here, Van's child support obligations are set out in paragraph 3 of the PSA, which was incorporated into the final judgment of divorce. Accordingly, the issue of emancipation involves an interpretation of the PSA.

¶20. Mississippi law favors settling disputes by agreements. *Williams v. Williams*, 37 So. 3d 1196, 1200 (¶8) (Miss. Ct. App. 2009) (citing *In re Dissolution of the Marriage of De St. Germain*, 977 So. 2d 412, 420 (¶23) (Miss. Ct. App. 2008)), *aff'd*, 37 So. 3d 1171 (Miss.

11

2010). "When the parties have reached [an] agreement and the chancery court has approved it, [the appellate court] ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts." *West v. West*, 891 So. 2d 203, 211 (¶15) (Miss. 2004). "A property settlement agreement that is incorporated into a divorce decree must be interpreted by courts as any other contract." *Siders v. Zickler*, 312 So. 3d 1224, 1228 (¶13) (Miss. Ct. App. 2021) (internal quotation marks omitted) (quoting *Dennis v. Dennis*, 234 So. 3d 371, 376 (¶15) (Miss. 2017)).

¶21. A "court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." *Ivison v. Ivison*, 762 So. 2d 329, 335 (¶16) (Miss. 2000) (citing *Merchants & Farmers Bank v. State ex rel. Moore*, 651 So. 2d 1060, 1061 (Miss. 1995)). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Id.* (citing *Delta Pride Catfish Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997)). A contract is ambiguous if it is "susceptib[le] to two reasonable interpretations." *Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009). The Mississippi Supreme Court has provided the following three-step analysis for contract interpretation:

> First, we look to the "four corners" of the agreement and review the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, we must effectuate the parties' intent. However, if the language of the contract is not so clear, we will, if possible, harmonize the provisions in accord with the parties' apparent intent. Next, if the parties' intent remains uncertain, we may discretionarily employ canons of contract construction. Finally, we may also consider parol or extrinsic evidence if necessary.

*West*, 891 So. 2d at 210-11 (¶14) (citations and internal quotation marks omitted).

¶22.    In *Rogers*, the Supreme Court was faced with interpreting an agreement for post-majority child support. *Rogers*, 662 So. 2d at 1114.  In that case, William and Francis Rogers were married and had two children. *Id.* at 1113.  William and Francis divorced and entered into a PSA in which William agreed to pay $100 per month in support for each minor child until the child had reached age eighteen, married, became self-supporting, or became emancipated. *Id.*  Alternatively, William agreed to pay child support as long as the children attended school or college. *Id.*  The agreement was modified three times after its initial execution.[12]  Hope, one of the parties' children, turned twenty-one on June 16, 1992, and in January 1993, Hope[13] "ceased receiving child support payments." *Id.*  In March 1993, Frances filed a motion for contempt against William, asserting he "had not paid child support as agreed." *Id.*  The chancellor held a contempt hearing on June 9, 1993, during which William asserted that the subsequent decrees modifying child support "released him from child support payments after majority, since it did not specify post-majority payments." *Id.*  William also maintained that "Hope was intentionally prolonging her education, making further child support an inequitable burden on him." *Id.*  The chancellor found that William was "contractually bound under his agreement to pay post-majority college support for his

---

[12]  Specifically, in 1987, the chancellor increased child support to $400 per month for both children for 1987, and to $500 per month for 1988 and thereafter. *Id*. at 1113.  Then, in 1989, the chancellor permitted William to discontinue making child support payments for Christopher and allowed William to make support payments directly to Hope. *Id.*  Finally, in 1991, Hope and William agreed to college support payments of $400 per month, with $250 of this amount going toward the previous child support order and $150 to satisfy an arrearage of child support. *Id.*

[13]  William paid child support directly to Hope pursuant to an agreed order.

children while they attended school or college" and, accordingly held William in contempt for non-payment. *Id*. at 1114. William appealed. *Id*.

¶23. On appeal, the Supreme Court found "ample evidence in the record to support the chancellor's interpretation of the collegiate child support agreement." *Id*. Specifically, the Supreme Court emphasized that William continued making child support payments until January 1993, which was "six months after [Hope] reach[ed] majority." *Id*. The Supreme Court opined, "[cl]early, William's actions demonstrated that he believed the collegiate child support agreement transcended Hope's majority." *Id*. Accordingly, the Supreme Court affirmed the chancellor's decision on the issue of post-majority age child support. *Id.*

¶24. At the outset, we note that Van does not dispute the chancellor's findings that the language of the PSA was unambiguous. Paragraph 3 of the PSA requires child support to continue through six years of college education for each child. Van's argument is that the language of paragraph 3 does not include express language extending this obligation beyond the age of twenty-one. Paragraph 12, which governed "College Education and Expenses," stated, "[T]his obligation may extend past the twenty-first birthday of any of the children." Paragraphs 3 and 12 are two separate and distinct provisions within the PSA. However, the chancellor considered both paragraphs together in its determination of Van and Catherine's intent. In doing this, the chancellor correctly looked to the "four corners" of the agreement to effectuate the parties' intent. *West*, 891 So. 2d at 210-11 (¶14). Then, the chancellor found that Van was required to pay child support for the children through six years of college education and that this requirement extended past the children's twenty-first birthday.

14

¶25. After looking at the four corners of the PSA, we hold that the parties' intent was to ensure support for the children through six years of college education. Neither Lexi nor K.S. had completed six years of college education, and both were attending college. Therefore, pursuant to the clear intent and agreement of the parties, Van's child support obligation continued until they completed their college education or six years if college takes that long. This obligation, which Van and Catherine agreed to, was not limited by the children attaining the age of majority.[14] Reviewing this issue de novo, we affirm the chancellor's findings.

II. **Whether the chancellor erred in refusing to emancipate K.S. because of her alleged cohabitation with her boyfriend without Van's approval.**

¶26. Van argues the chancellor abused her discretion in declining to emancipate K.S. under section 93-11-65(8)(b)(iii). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Dixon v. Dixon*, 238 So. 3d 1191, 1197 (¶20) (Miss. Ct. App. 2018) (citing *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003)).

¶27. Section 93-11-65(8)(b) provides that "[u]nless otherwise provided for in the underlying child support judgment, the court *may* determine that emancipation has occurred and no other support obligation exists when the child," inter alia, "[c]ohabits with another

---

[14] Furthermore, we note that Van continued to make child support payments to Catherine after their eldest daughter, Marlee (born in January 1998), was beyond the age of majority. In fact, when Van filed his initial motion to terminate child support on November 16, 2021, Marlee was two months away from turning twenty-four years old, over three years beyond the age of majority.

person without the approval of the parent obligated to pay support." Miss. Code Ann. § 93-11-65(8)(b)(b)(iii) (emphasis added). Van argues that because K.S. cohabitated with Austin without Van's approval, the chancellor should have emancipated K.S., which would have terminated Van's child support obligations. After hearing from both parties and considering all the evidence, the chancellor found the following:

> The [c]ourt finds that [K.S.] . . . is nineteen (19) years old. That she is enrolled in Hinds Community College and is currently not employed.
>
> There was testimony that [K.S.] was dating Austin Kemp, an adult of the approximate age of twenty-six (26) years. . . . [Catherine] testified that she has told [K.S.] that she did not approve of her dating Austin . . . . There was testimony that [K.S] has stayed overnight at Austin Kemp's parents' home, where he resides. [Catherine] testified that [K.S.] does not live with Austin Kemp. . . . The [c]ourt finds that K.S. is not emancipated.

¶28. In Catherine's trial testimony, she denied that [K.S.] lived with Austin, but that K.S. admitted to "staying" with Austin at his parents' house a couple of times. Van testified that K.S. admitted she was living at "Austin's house." The record indicates that, on the date of the hearing, K.S. was nineteen years old, a full-time student at Hinds, unemployed, and receiving support from Catherine in the form of "money, toiletries, and food[,] . . . car tags[,] . . . car insurance[,] . . . deodorant, tampons, razors . . . anything [she] need[ed]."

¶29. Although the testimony is conflicting as to whether K.S. actually cohabitated with Austin, the chancellor declined to emancipate her. Subparagraph (8)(b)(iii) of section 93-11-65 is a discretionary provision. *Dixon*, 238 So. 3d at 1197 (¶20). In other words, subparagraph (8)(b)(iii) merely gives the chancellor discretion to emancipate a child. *Id*. at (¶22) (citing *Wesson v. Wesson*, 818 So. 2d 1272, 1282 (¶25) (Miss. Ct. App. 2002)). *Id*.

"[S]ince the chancellor is best able to determine the credibility of the witnesses' testimony, it is not [this Court's] province to undermine the chancellor's authority by replacing the chancellor's judgment with our own." *Chance v. Chance*, 191 So. 3d 1293, 1300 (¶24) (Miss. Ct. App. 2016). We find substantial evidence supported the chancellor's findings as to this issue.

**CONCLUSION**

¶30. We hold that paragraph 3 of the PSA requires Van to pay child support through six years of the children's college educations, and this obligation extends beyond Lexi and K.S. attaining the age of twenty-one. Furthermore, we hold the chancellor did not abuse her discretion or manifestly err in finding K.S. was not emancipated under section 93-11-65(8)(b)(iii). Accordingly, we affirm.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

17